GEORGE T. CORNWELL, THE FIRST NATIONAL BANK OF MORGANTON AND G. MAURICE HILL, EXECUTORS AND TRUSTEES UNDER THE WILL OF MARY LOUISE HUFFMAN CORNWELL, AND GEORGE T. CORNWELL v. R. O. HUFFMAN, G. T. CORNWELL AND THE FIRST NATIONAL BANK OF MORGANTON, TRUSTEES UNDER AGREEMENT WITH MARY LOUISE HUFFMAN AND MARY LOUISE HUFFMAN CORNWELL, DATED DECEMBER 31, 1937, AND R. O. HUFFMAN, G .T. CORNWELL AND THE FIRST NATIONAL BANK OF MORGANTON, TRUSTEES UNDER AGREEMENT WITH MARY LOUISE HUFFMAN, MARY LOUISE HUFFMAN CORNWELL, AND OTHERS, DATED DECEMBER 31, 1960, R. O. HUFFMAN, G. T. CORNWELL AND THE FIRST NATIONAL BANK OF MORGANTON, TRUSTEES OF THE HUFFMAN-CORNWELL FOUNDATION, MARY LOUISE CORNWELL McCOMBS, ANN CORNWELL AVERY, BARBARA CORNWELL NORVELL, MARY LOUISE McCOMBS, JAMES HENRY McCOMBS, III, THOMAS HUFFMAN McCOMBS, ANN LOUISE NORVELL, JEAN ALLEN NORVELL, MARY LOUISE HUFFMAN, AND ALL UNBORN PERSONS HAVING ANY INTEREST IN THE ESTATE OF MARY LOUISE HUFFMAN CORNWELL, OR IN THE TRUSTS HEREIN REFERRED TO, AND RUSSELL BERRY, GUARDIAN AD LITEM FOR MARY LOUISE McCOMBS, JAMES HENRY McCOMBS, III, THOMAS HUFFMAN McCOMBS, ANN LOUISE NORVELL, JEAN ALLEN NORVELL, AND ANY UNBORN ISSUE.

(Filed 11 January 1963.)

1. Wills § 70—

There is no statute in this State which directs a method of apportionment of estate and inheritance taxes as between the testamentary and the trust estates in those instances in which testator creates a trust which must be included in the gross estate in computing the tax, and therefore the court must look to the equity of the situation upon the facts of each particular case. 26 USCA 2036; G.S. 105-2(3), (7), (8).

**2. Same—— Under the facts of this case, inheritance and estate taxes should be apportioned between the testamentary and trust estates.**

Testatrix transferred property to a trustee with provision that income therefrom should be paid to herself and her mother and that the trust should terminate upon the death of her mother, with further provision that if she predeceased her mother the property should be divided upon the termination of the trust among her descendants *per stirpes*. The will provided that in the event testatrix predeceased her mother the property passing under the will should be liable for estate and inheritance taxes as though the testamentary property comprised the entire estate for tax purposes, and that the remainder of such taxes should be paid out of the principal of the trust. The property passing under the will was relatively much less than the trust estate. *Held:* The inheritance and estate taxes were properly apportioned between the trust estate and the property passing under the will in accordance with the intention of testatrix as expressed in the will and in accordance with the equity of the particular factual situation.

APPEAL by defendant Berry as guardian *ad litem* from *Clarkson, J.,* August 1962 Mixed Term of BURKE.

This action was begun to determine how the tax burden created by the death of Mrs. Mary Cornwell should be apportioned among the several properties which created the tax liability. A jury trial was waived. The parties offered evidence. Judge Clarkson made findings of fact. Judgment was rendered based on the facts found. Defendant Berry as guardian *ad litem* excepted and appealed. The facts found are, to the extent necessary for an understanding of the questions presented and the reasons for the conclusions reached, summarized in the opinion.

*Hudson, Ferrell, Petree, Stockton, Stockton & Robinson by H. G. Hudson, Patton and Ervin, by Frank C. Patton, and S. McD. Tate for appeliees.*
*Russell Berry for appellant.*

RODMAN, J. Mary Louise Huffman Cornwell, hereafter Mrs. Cornwell, died testate in December 1961. She left surviving her husband, George T. Cornwell, three daughters, Mrs. Mary Cornwell McCombs, Mrs. Ann Avery, Mrs. Barbara Norvell, all over twenty-one and five grandchildren, Mary L. McCombs, James H. McCombs III, Thomas H. McCombs, Ann L. Norvell, and Jean Norvell. All the grandchildren are minors. Mrs. Mary L. Huffman also survived her daughter, Mrs. Cornwell. Mr. Cornwell, the First National Bank of Morganton, and G. Maurice Hill are the executors of Mrs. Cornwell's will.

On 31 December 1937 Mrs. Huffman and Mrs. Cornwell transferred and conveyed to R. O. Huffman, Mr. Cornwell, and First National

Bank of Morganton as trustees, stocks in fourteen different corporations and a note for $5000 given by Mr. Cornwell in August 1936. The properties transferred came to the grantors from F. O. Huffman and were owned one-third by Mrs. Huffman, two-thirds by Mrs. Cornwell. The trust agreement provided that Mrs. Huffman should receive $6000 annually from the income produced by the securities transferred. The amount so to be paid was the first charge against the income which the securities might yield. Mrs. Cornwell should, after the payment of $6000 to her mother, receive $1000 from the income. If the securities yielded more than $7000 annually, the next $2000 should be divided one-half to Mrs. Cornwell and one-half to Mrs. Huffman. Income in excess of $9000 a year would be invested and added to the principal so as to guarantee Mrs. Huffman an income of $6000 during her life. The trust agreement was not subject to modification or change as to principal during Mrs. Huffman's life, but by unanimous agreement of the grantors and trustees the provisions with respect to income could be modified. The trust agreement provided for termination on the death of Mrs. Huffman. If Mrs. Cornwell survived her mother, Mrs. Cornwell became the owner of all the trust properties; but if Mrs. Huffman survived her daughter, the trust would continue in effect until Mrs. Huffman's death, at which time the trust estate would be payable "to the children of Mary Louise Cornwell, or their representative, per stirpes and not per capita."

The properties delivered to the trustees pursuant to the agreement of 31 December 1937 were valued at that time at $190,000. When Mrs. Cornwell died, these trust properties were valued at $3,682,693.11. Mrs. Cornwell's proportionate share of this trust at her death was $2,455,128.74, which is includible in her estate.

In addition to her interest in the trust estate, Mrs. Cornwell owned at her death real and personal property valued at $815,791.92, which, for convenience, we refer to as the probate estate. She also had $10,000 of life insurance payable to her husband and owned as tenant by the entirety real estate chargeable with estate taxes valued at $27,385. Thus the aggregate value of the properties to be accounted for in computing estate and inheritance taxes was $3,308,305.66. In addition to these properties there is a possible tax liability for properties held under "A Living Trust Agreement" created by Mrs. Cornwell and others on 31 December 1960. If it should be determined that any part of that trust is part of the taxable estate, the tax liability for that part can be determined in accord with the principles stated in this opinion.

Mrs. Cornwell's will gave jewelry and household furniture to her daughters. She gave her automobile to her husband. Except for these

relatively small bequests, the remainder of her estate passed under the residuary clause.

The residuary estate is expressly declared liable for debts owing by Mrs. Cornwell. Subject to the payment of debts and other charges against the residuary estate, one-half is given to Mrs. Cornwell's husband and the remaining half is left in trust for her three daughters and their children.

When the will was prepared, it was uncertain whether the trust agreement of December 1937 would have terminated by the death of Mrs. Huffman prior to the death of Mrs. Cornwell, thereby vesting title to all of the trust properties in Mrs. Cornwell and subject to disposition by her will, or whether Mrs. Cornwell, not having survived Mrs. Huffman, would be unable to direct by will to whom the trust property should go.

The will undertakes to provide how taxes accruing by reason of Mrs. Cornwell's death should be paid in either situation. First she assumes that the trust created in December 1937 will have terminated and she will be the owner of all the trust properties. In that event she directed "all estate and inheritance taxes and other taxes in the general nature thereof which shall become payable upon or by reason of my death in respect of any property passing by or under the terms of the will or of any codicil thereto hereafter executed by me, or in respect of the proceeds of any policy or policies of insurance on my life, or in respect of any other property included in my gross estate for the purposes of such taxes, shall be paid by my Executors out of my residuary estate. If I shall not survive my mother or if so much of the said properties as may be attributable to my contribution to the said trust shall not be subject to disposition by me as a part of my estate, I direct, to the extent that I may lawfully do so, that estate and inheritance taxes and other taxes in the general nature thereof which are levied upon the property passing under this will shall be paid out of my residuary estate as if the property passing under this will constituted my entire estate for the purpose of such taxes, and that all the remainder of such taxes shall be paid out of the principal of the said trust which does not pass under this will."

The Internal Revenue Code enacted by Congress imposes a tax on the transfer of property by death. 26 USCA 2001. The taxable estate is the gross estate less exemptions and deductions. 26 USCA 2051. Executors must include in the gross estate life insurance, 26 USCA 2042, property held by the entirety, 26 USCA 2040, and property transferred subject to the right of the transferor to the income for life, 26 USCA 2036.

Executors, chargeable with responsibility for filing the required reports and paying the tax, may deduct from the gross estate certain debts, funeral and administrative expense. 26 USCA 2053. A spouse is entitled to a marital deduction computed as provided in 26 USCA 2056.

Our inheritance tax statutes likewise require, subject to exemptions and deductions, inclusion for tax purposes properties where grantor retains the right to receive the income for his life, properties held as tenants by the entirety and life insurance. G.S. 105-2(3), (7), (8).

The executors, as it was their duty to do, prepared tentative estate and inheritance tax returns. The estate tax, using values as of date of death, exceeds $1,000,000. Estimated inheritance taxes amount to $192,765.95. The probate estate, less debts having priority over the estate tax and estimated costs of administration, is only $790,000. Where shall the money come from to pay estate and inheritance taxes? Manifestly the properties held in the trust created in December 1937 must, because no other source is available, pay a part of these taxes. What method shall be employed to determine the extent of liability of the trust?

All of the parties to this action who have reached their majority, except the guardian *ad litem,* agreed that the taxes, estate and inheritance, should be apportioned and paid in accord with the final method of computation hereafter set out.

Three tentative methods of computing the tax were made by public accountants for the executors. They testified as to the amount of tax due based on the method employed. One method was based on the assumption that the probate estate would pay the tax computed as if it constituted the gross estate; property passing to the husband outside of the probate estate (insurance and land held by the entirety) would pay no tax because of the marital deduction. The balance of the tax would be paid by the trust estate. Using this method of computation, the tax would amount to $1,012,939.15, of which $105,665.47 would be payable by the probate estate. The remainder, $907,273.68, would be payable by the trust estate.

The second method used in computing the tax would exhaust the probate estate before imposing liability on the trust estate. Again no tax would be imposed on the husband for the properties received outside the probate estate .The tax based on this method of computation would be $1,162,139.73, of which $790,000 would be paid by the probate estate and the balance, $372,139.73, would be paid by the trust.

The third method assumed each class should pay in the proportion which it contributed to the adjusted gross estate. The tax computed

according to this method would be $1,053,212.61, payable $252,254.95 by the probate estate, $12,013.99 by the husband for properties received outside the probate estate, and $788,943.67 by the trust. This in substance is the method which Mrs. Cornwell directed the executors to use.

The court ordered an apportionment of the taxes and directed payment in accord with the third method, which conforms to the agreement.

The guardian *ad litem* insists Mrs. Cornwell had no interest in the trust estate created in 1937 which survived her death, and because she had no interest extending beyond her death, the direction given in her will with respect to the payment of death taxes imposed no obligation on the trust; nor did the agreement between the trustees and Mrs. Cornwell's daughters, whose rights to participate in the trust are subject to termination by their death before the death of Mrs. Huffman, create any obligation on the trust. If the logic of these contentions be conceded, the trust estate is not discharged of all liability, because estate taxes are by statute, 26 USCA 6324, a lien on the property included in the trust estate. Congress has not fixed the manner in which tax burden shall be apportioned among those taking properties which are subject to the lien. *Fernandez v. Wiener*, 326 U.S. 340, 90 L. ed. 116; *Riggs v. Del Drago*, 317 U.S. 95, 87 L. ed. 106.

We have no statute prescribing the manner in which the burden of estate taxes shall be borne.

Where the ultimate burden of paying estate taxes rests has been the subject of much litigation. Results of course vary with the many differing factual situations. Where, as here, the taxable estate includes properties outside the probate estate, there is lack of uniformity of decision.

In the absence of statute or testamentary direction, some courts hold the probate estate is liable for the tax without any right of contribution from the nonprobate properties. *Ericson v. Childs*, 198 A 176, 115 A.L.R. 907; *Warfield v. Merchants Nat. Bank of Boston*, 147 N.E. 2d 809; *Central Trust Co. v. Burrow*, 58 P 2d 469, are illustrative of a line of cases holding no right of contribution exists in favor of the probate estate against the nonprobate estate. The rule so announced was in several instances stated prior to the decision of the Supreme Court of the United State in *Riggs v. Del Drago, supra.* Some decisions assumed the Federal statute did not permit contribution. That question, as previously noted, was settled in the *Riggs* case. The legislatures of many states have since adopted statutes providing for apportionment. CCH Fed Estate and Gift Tax, par. 2490.16.

Many other courts have held that in the absence of testamentary direction to the contrary, equity required apportionment. The reasoning supporting this view is forcefully stated in the opinion of Legge, J., speaking for the Supreme Court of South Carolina in *Myers v. Sinkler*, 110 S.E. 2d 241. Similar conclusions are reached in *Carpenter v. Carpenter*, 267 S.W. 2d 632; *Boyd v. Jordan*, 168 A 2d 286; *Sebree v. Rosen*, 349 S.W. 2d 865; *Bragdon v. Worthley*, 153 A 2d 627; *Trimble v. Hatcher's Executors*, 173 S.W. 2d 985. The subject is treated at length in the annotations appearing 115 A.L.R. 916, 142 A.L.R. 1135, 15 A.L.R. 2d 1216, and 37 A.L.R. 2d 169.

As previously noted we have no statute which is controlling in the present factual situation. We must, therefore, look to the equity of the situation and apply rules previously announced in somewhat related cases. The right of equitable contribution has been recognized and applied with respect to gift taxes. *Nebel v. Nebel*, 223 N.C. 676, 28 S.E. 2d 207.

The earliest case we find dealing with liability for estate taxes and the fund which should be used to provide payment is *Buffaloe v. Barnes*, 226 N.C. 313, 38 S.E. 2d 222, decided in 1946. The Court stated the question relating to estate taxes thus: "The fourth question was whether the amount of Federal Estate tax of $604 should be paid by the executors out of the general funds of the estate, or charged against the individual beneficiaries." The Court made this answer: "The ruling of the trial judge that the Federal Estate tax should be paid out of the general funds of the estate is affirmed. *Riggs v. Del Drago*, 317 U.S. 95. The general rule, in the absence of contrary testamentary provision, is that the ultimate burden of an estate tax falls on the residuary estate. 142 A.L.R. 1137, and cases cited."

The next case in which the Court had occasion to consider the question was *Craig v. Craig*, 232 N.C. 729, 62 S.E. 2d 336, decided in 1950. The case as reported merely refers to facts agreed without stating what the agreed facts were. We have, however, examined the record and find that the estate taxable by the Federal government in that case included property passing by the entirety and life insurance—nonprobate assets. The Superior Court held that the Federal tax was to be paid by the residuary estate without contribution. This Court said in a *per curiam* opinion: "This ruling is supported by the holding of this Court in *Buffaloe v. Barnes*, 226 N.C. 313, 38 S.E. 2d 222, and is in accord with the weight of authority in other jurisdictions. 28 AJ 136, 142 A.L.R. 1137. *No contrary testamentary provision appears in the will*." (Emphasis added)

The briefs filed in that case have been examined. The question whether the Craig will did or did not direct the manner in which

the Federal taxes should be paid was debated. Hence the language of the Court is particularly pertinent, we think, in the disposition of this case. Here Mrs. Cornwell has, in language not subject to misinterpretation, expressly provided that her probate estate should not be subject to taxes which would accrue and become a lien thereon because the Federal government likewise taxes the funds held in the 1937 trust. Her express direction with respect to the payment of the taxes gives, we think, the executors of her estate the right to ask the court to apply the rule of contribution.

Minnesota, prior to the adoption of an apportionment statute in 1962, was among the states which place the burden of payment on the probate estate. The Federal District and Eighth Circuit Court of Appeals were, in *U.S. v. Goodson*, 253 F 2d 900, called upon to interpret the Minnesota law where the testator had expressly provided that his probate estate should only be liable for its proportionate part of the taxes. The District Court held that the tax burden should be prorated in accordance with the values of the estate and as directed by testator. The Circuit Court of Appeals, affirming the trial judge, said: "Where the government by its tax statutes has a constitutional right to tax as a part of the gross estate certain property not passing by will, it does not seem unreasonable to permit the testator to provide by his will that the pro rata share of the tax, imposed by reason of the inclusion of such nontestamentary property in the gross estate subject to the tax, shall be borne by the beneficiaries of the nontestamentary gifts."

This Court was next called upon to consider the computation and payment of estate taxes in *Trust Co. v. Green*, 236 N.C. 654, 73 S.E. 2d 879, decided in 1953. There the widow dissented from the will and took her rights as fixed by statute. She insisted that the part of the estate to which she was entitled should be computed without considering the estate tax. This Court held to the contrary and directed computation and payment to her of her portion of the estate after the payment of estate taxes. The net result was that she contributed her proportionate part towards the payment of the Federal taxes. Her rights, of course, were fixed by statute. Her husband could not, by will, deprive her of her marital rights.

Judge Clarkson, in his findings, said: "The apportionment and contribution approved and directed by this judgment is in the interest of all the parties including those represented by the guardian *ad litem*, and such apportionment and contribution are fair, just and equitable and in accordance with the laws of this state." We think this finding warranted by the record.

The judgment is
Affirmed.