FIRST NATIONAL BANK OF NEVADA, EXECUTOR UNDER THE WILL OF PEARL K. WELLS; PLANTERS NATIONAL BANK & TRUST COMPANY AND LILLIAN KENT DICKENS, ANCILLARY ADMINISTRATORS OF THE ESTATE OF PEARL K. WELLS, v. REDMOND S. WELLS.

(Filed 11 May, 1966.)

**1. Appeal and Error § 60—**

Decision on appeal that testatrix had exercised a valid power of appointment by will is conclusive on the parties, and none of them may contend in a subsequent action that no power of appointment existed in the testatrix.

**2. Wills § 70—**

26 U.S.C.A. 2207 is merely an enabling act to aid executors and administrators in protecting probate estates passing through their hands, and the statute does not violate the Tenth Amendment to the Federal Constitution, and liability of beneficiaries for federal estate taxes is to be determined by state law.

**3. Same; Courts § 20—**

Where the will of a nonresident disposes of property situate in this State, the apportionment of the federal estate taxes among the beneficiaries is to be determined by the law of testator's domicile, and liability of the resident beneficiary for his proportionate share of the tax in accordance with its laws may be enforced under 26 U.S.C.A. § 2207, not-

withstanding that a decree of the court of the domicile with respect to apportionment would not be binding on the resident beneficiary when the foreign court has obtained no jurisdiction over him.

**4. Wills § 70—**

Where property situate in this State is devised by a nonresident testatrix in the execution of the general power of disposition, and such property is included in her net estate in computing the federal estate tax, and the will contains no express direction regarding the burden with respect to the payment of such tax, the devisee is chargeable with his pro rata share of the federal estate taxes. This result follows under the laws of the State of Nevada of which testatrix was a resident and in which the greater part of the estate is located, and would follow under our doctrine of equitable contribution for tax liability.

**5. Same—**

Where a nonresident executor has paid the federal estate taxes on the entire net estate and has sent his annual account and report to a resident beneficiary, such resident beneficiary is liable for interest on his pro rata part of the federal estate taxes and interest from the dates the executor pays the tax and interest, and not only from the date the executor made formal demand on the beneficiary for payment.

MOORE, J., not sitting.

APPEAL by defendant from *Copeland, Special Judge,* January 10 non-jury Session 1966 of WAKE.

This action was instituted by First National Bank of Nevada, Executor of the will of Pearl K. Wells, Planters National Bank & Trust Company and Lillian Kent Dickens, Ancillary Administrators of the estate of Pearl K. Wells, to recover from the defendant, a citizen of Durham County, North Carolina, the pro rata part of the federal estate taxes attributable to property received by him by virtue of the exercise of a power of appointment by Pearl K. Wells. Two companion suits were brought by the same plaintiffs against William M. Wells, Jr. and Alice Elizabeth Wells Romanek. In each of those suits the allegations of the complaints and the answers were identical to those in this case. The three cases were consolidated for trial and identical judgments were entered. For convenience, only one case was appealed and a stipulation was entered to the effect that the decision of the Supreme Court in the *Redmond S. Wells* case would control the other two cases.

By instrument dated 3 February 1956 William M. Wells, husband of Pearl K. Wells, created a trust for the benefit of his wife. Planters National Bank & Trust Company of Rocky Mount, North Carolina, was named Trustee in said instrument.

The answer of the defendant, Redmond S. Wells, who is an in-

competent by reason of a congenital disease, was duly verified by Josey M. Wells, his general guardian.

William M. Wells died on 6 September 1961. He left a last will and testament dated 6 February 1956. In Item 4 of the will the testator devised to the Planters National Bank & Trust Company of Rocky Mount, North Carolina, as Trustee under the trust above referred to, sufficient property which, when added to any other property devised or bequeathed to his wife and qualifying for the marital deduction, would equal one-half of his adjusted gross estate. He directed that the five farms in North Carolina, described in paragraph 8 of the complaint, be included in the Pearl K. Wells trust.

Item 7 of the instrument creating the Pearl K. Wells trust by William M. Wells provided that the Pearl K. Wells trust would terminate upon the death of Pearl K. Wells and the *corpus* of the trust would be equally divided between the defendant, Redmond S. Wells, and his brother, William M. Wells, Jr., and his sister, Alice Elizabeth Wells Romanek, who were children of William M. Wells by a previous marriage.

Item 9 of the above instrument contained the following provision:

"(9)    But notwithstanding all the foregoing limitations over after the death of my wife, nevertheless, my said wife, Pearl K. Wells, shall alone and at all events throughout her lifetime have the power to dispose of the entire *corpus* of this trust, free of the trust, by her will, but only by making specific reference to this power, as she may see fit, with the same effect as if she were the owner of said *corpus* free of the trust. This provision shall override all the limitations after the original life estate to my wife."

Pearl K. Wells died on 28 June 1962. She left a last will and testament dated 5 May 1961 in which she exercised the power of appointment created by her husband and devised the North Carolina real estate involved herein to the three children of her husband by a previous marriage, share and share alike.

The court below found as a fact that the gross estate of Pearl K. Wells involved herein amounted to $547,467.96, including the appointed property, less exemptions, leaving a taxable estate of $487,467.96, on which federal estate taxes in the amount of $129,-791.03 were determined to be due on or about 28 September 1963. The tax was paid in installments together with accrued interest, as follows:

| | |
|---|---:|
| Oct. 10, 1963 | $ 43,006.00 |
| Jan. 3, 1964 | 48,364.47 |
| Feb. 10, 1964 | 15,995.85 |
| March 3, 1964 | 6,000.00 |
| Aug. 19, 1964 | 18,426.73 |
| Total | $131,793.05 |

The court below further found as a fact that the value of the property devised to the defendant pursuant to the exercise of the power of appointment by Pearl K. Wells as shown on the federal estate tax return, is $91,208.33, and that the value of the property devised to defendant is 16.66% of the taxable estate of Pearl K. Wells as shown on said tax return.

The conclusions of law of the court below pertinent to decision herein are as follows:

"3. That section 2207 of the Internal Revenue Code (26 U.S.C.A. 2207) is applicable to the facts of this case and is valid and constitutional and does not violate the Tenth Amendment of the Constitution of the United States. Under said section the plaintiffs are entitled to recover from the defendant 16.66% of the Federal estate tax which they have paid on the Estate of Pearl K. Wells and any interest on said tax which they have paid, together with interest at the rate of 6% from the dates of payment; that is, the plaintiffs are entitled to recover 16.66% of each payment shown in Finding of Fact 11 above, together with interest thereon from the date of such payment.

"4. In the event that the Court is wrong in Conclusion of Law 3 immediately above, then the Court is of the opinion that North Carolina Law would be applicable to the question of whether the defendant should be required to bear a pro rata part of the Federal estate tax. The Court is of the opinion that under the North Carolina Law the defendant should bear his pro rata part of the Federal estate tax attributable to the value of the property received by him on account of the exercise of the power of appointment by Pearl K. Wells, and that such apportionment of the Federal estate tax is fair, just and equitable. Under North Carolina Law the plaintiffs are entitled to recover from the defendant 16.66% of the Federal estate tax which they have paid on the Estate of Pearl K. Wells and any interest on said tax which they have paid, together with interest at the rate of 6% from the dates of payment; that is, the plaintiffs are entitled to recover 16.66% of each payment shown in Finding of Fact 11 above, together with interest thereon from the date of such payment.

"And it appearing to the Court that the plaintiffs have abandoned the theory that they are entitled to recover of the defendant a pro rata part of the Federal estate tax by virtue of the binding and conclusive effect of the Orders issued by the Second Judicial Court of the State of Nevada, for that said Court lacked jurisdiction of the defendant.

"And it further appearing to the Court that under the Finding of Fact above the Nevada 'Federal Estate Tax Apportionment Law' does not apply.

"And it further appearing to the Court that under the Findings of Fact above the plaintiffs are entitled to recover on the theories of the case set forth under Conclusions of Law 3 and 4 above."

The court entered judgment in favor of plaintiffs and against the defendant for 16.66% of the respective payments made by the executor of the estate of Pearl K. Wells as set out hereinabove, with interest at 6% from the date the respective payments were made. The defendant appeals, assigning error.

*Joyner & Howison, W. T. Joyner, Jr., Battle, Winslow, Merrell, Scott & Wiley for plaintiffs, appellees.*

*Poyner, Geraghty, Hartsfield & Townsend and Arch E. Lynch, Jr., for defendant appellant.*

DENNY, E.J. The determinative question posed on this appeal would seem to be simply this: Is the devise of real property under a general power of appointment which is included in the gross estate for federal estate tax purposes liable under the law for payment of a pro rata part of the federal estate tax where the will of the devisor contains no express direction regarding the ultimate burden with respect to the payment of such tax?

As we interpret the evidence, the stipulations and findings of fact by the court below, it is uncontradicted by any competent evidence that the estate of Pearl K. Wells had a gross value of $547,-467.96 for federal estate tax purposes and that the tax determined to be due, based on the federal estate tax return, was $129,791.03. And, further, that Pearl K. Wells, pursuant to the power of appointment created as hereinabove set out, devised to the defendant, Redmond S. Wells, an undivided interest in real property in North Carolina in fee simple, having a value of $91,208.33, which property was included at such value in the gross estate of Pearl K. Wells for federal estate tax purposes. That this devise represents 16.66% of the value of the gross estate of Pearl K. Wells.

The defendant contends that stipulation No. 3 should be construed as an agreement of counsel that Pearl K. Wells did not have "a general power of appointment" over the North Carolina property involved in this proceeding. As a matter of fact, the stipulation merely identified the estate tax return and stated "the estate tax has been paid on the basis of said return."

Counsel for defendant contends that certain answers to questions in Schedule H of the return tend to show that no power of appointment exists. Even so, an examination of this schedule tends to show both the existence and non-existence of such power. However, the question of the existence and validity of such power is no longer an open question. This Court, in the case of *Wells v. Trust Co.,* 265 N.C. 98, 143 S.E. 2d 217, settled this question. Sharp, J., speaking for the Court said:

> "Did the interest of R. S. Wells in the *corpus* of the Pearl K. Wells Trust pass to him in fee, freed of the trust, as appointee under the will of Pearl K. Wells? Or did it pass, under the terms of the *inter vivos* trust, to defendant Bank as trustee for R. S. Wells for life and at his death to his heirs (excluding any adopted child) in fee? The answer is that R. S. Wells owns his share in fee, freed of the trust, as appointee. By the terms of the instrument creating the Pearl K. Wells Trust, the income beneficiary was given a general power of appointment to dispose of the corpus of the trust by her will just as if she herself owned the *corpus* free of the trust. She could have appointed to her own estate."

The plaintiffs contend they are entitled to recover of the defendant on three separate and alternate grounds, as follows:

1. That under the Federal statute, 26 U.S.C.A. 2207, the plaintiffs have the right to collect from the defendant the pro rata part of the federal estate tax.

2. In the event it should be held that the Federal statute is unconstitutional or for any reason not applicable, then the plaintiffs contend they are entitled to recover from the defendant under the North Carolina law.

3. That if the lower court erred in concluding that under North Carolina law the defendant is required to pay his pro rata part of the federal estate tax, that such error was harmless because the Nevada law is applicable to this case, and that under the apportionment law of Nevada the plaintiffs are entitled to recover of the defendant his pro rata part of the federal estate tax.

The court below ruled with the plaintiffs on their contentions Nos. 1 and 2, but denied their contention as to No. 3.

Now with respect to contention No. 1. Section 2207 of the Internal Revenue Code (26 U.S.C.A. 2207) provides in part as follows:

> "Unless the decedent directs otherwise in his will, if any part of the gross estate on which the tax has been paid consists of the value of property included in the gross estate under Section 2041, the Executor shall be entitled to recover from the person receiving such property by reason of the exercise, non-exercise, or release of a power of appointment such portion of the total tax paid as the value of such property bears to the sum of the taxable estate and the amount of the exemption allowed in computing the taxable estate. * * * If there is more than one such person, the Executor shall be entitled to recover from such persons in the same ratio. * * *"

It is the position of the defendant that the states have the exclusive right to determine how decedents' estates under their jurisdiction shall be distributed, and that Section 2207 of the Internal Revenue Code infringes this right.

It seems to be the general rule as to probate estates that Congress has left it to the respective states to determine who shall pay the federal estate tax levies.

In the case of *Riggs v. Del Drago,* 317 U.S. 95, 87 L. Ed. 106, the question posed for determination was, "* * * whether Section 124 of the New York Decedent Estate Law, which provides in effect that, except as otherwise directed by the decedent's will, the burden of any federal death taxes paid by the executor or administrator shall be spread proportionately among the distributees or beneficiaries of the estate, is unconstitutional because in conflict with the federal estate tax law."

The New York Court of Appeals held the New York act unconstitutional. (See 287 N.Y. 61, 38 N.E. 2d 131.) The Supreme Court of the United States said:

> "In the act of 1916 Congress turned from the previous century's inheritance tax upon receipt of property by survivors * * * to an estate tax upon the transmission of a statutory 'net estate' by a decedent. That act directed payment by the executor in the first instance, section 207, but provided also for payment in the event that he failed to pay, section 208. It did not undertake in any manner to specify who should bear the burden of the tax. Its legislative history indicates clearly that Congress did not contemplate that the Government would be interested in the distribution of the estate after the tax was paid, and that Congress intended that state law should deter-

mine the ultimate thrust of the tax," citing a statement of Congressman Kitchin, Chairman of the House Ways and Means Committee, as follows:

"We levy an entirely different system of inheritance taxes. We levy the tax on the transfer of the flat or whole net estate. We do not follow the beneficiaries and see how much this one gets and that one gets, and what ·rate should be levied on lineal and what on collateral relations, but we simply levy on the net estate. This also prevents the Federal Government, through the Treasury Department, going into the courts contesting and construing wills and statutes of distribution." 53 Cong. Rec. App. p. 1942.

The Court further said:

"* * * while the federal statute normally contemplates payment of the tax before the estate is distributed, § 822(b) of the Code, 26 U.S.C.A. § 822(b), provision is made for collection of the tax if distribution should precede payment, § 826(a). If any distributee is thus called upon to pay the tax, § 826(b) provides that such person 'shall be entitled to reimbursement out of any part of the estate still undistributed or by a just and equitable contribution by the persons whose interest in the estate of the decedent would have been reduced if the tax had been paid before the distribution of the estate.' By that section Congress intended to protect a distributee against bearing a greater burden of the tax than he would have sustained had the tax been carved out of the estate prior to distribution; any doubt that this is the proper construction is removed by the concluding clause of the section specifically stating that it is 'the purpose and intent of this subchapter that so far as is practicable and unless otherwise directed by the will of the decedent the tax shall be paid out of the estate before its distribution.' Section 826(b) does not command that the tax is a non-transferable charge on the residuary estate; to read the phrase 'the tax shall be paid out of the estate' as meaning 'the tax shall be paid out of the *residuary* estate' is to distort the plain language of the section and to create an obvious fallacy. For in some estates there may be no residue or else one too small to satisfy the tax; resort must then be had to state law to determine whether personalty or realty, or general, demonstrative or special legacies abate first. In short, § 826(b), especially when cast in the background of Congressional intent discussed before, simply provides that, if the tax must be collected after distribution, the final impact of the tax shall be the same as though

it had first been taken out of the estate before distribution, thus leaving to state law the determination of where that final impact shall be.

"Respondents also rely on § 826(c) (now 26 U.S.C.A. § 2206), authorizing the executor to collect the proportionate share of the tax from the beneficiary of life insurance includable in the gross estate by reason of § 811(g), and § 826(d). 26 U.S.C.A. 1940 Ed. §§ 811(g), 826(d) (now 26 U.S.C.A. § 2207), authorizing similar action against a person receiving property subject to a power which is taxable under § 811(f), as forbidding further apportionment by force of state law against other distributees. But these sections deal with property which does not pass through the executor's hands and the Congressional direction with regard to such property is wholly compatible with the intent to leave the determination of the burden of the estate tax to state law as to properties actually handled as part of the estate by the executor.

"Since § 124 of the New York Decedent Estate Law is not in conflict with the federal estate tax statute, it does not contravene the supremacy clause of the Constitution."

The Court held the New York apportionment act constitutional and reversed the New York Court of Appeals.

The case of *Fernandez v. Wiener,* 326 U.S. 340, 90 L. Ed. 116, involved the constitutionality of a 1942 amendment to the federal estate tax law which provided that the entire value of property (rather than one-half) owned by husband and wife in a community property state would be taxable on the death of either. The constitutionality of the law was challenged on various grounds, one of which was stated by the Court as follows: "And finally the tax is said to invade the powers reserved to the states by the Tenth Amendment, to determine property relationships within their borders."

The Court held that the 1942 law was constitutional. On the question of whether it violated the Tenth Amendment, the Court said:

"The Tenth Amendment does not operate as a limitation upon the powers, expressed or implied, delegated to the national government. * * * The amendment has clearly placed no restriction upon the power, delegated to the national government to lay an excise tax *qua* tax. Undoubtedly every tax which lays its burden on some and not others may have an incidental regulatory effect. But since that is an inseparable concomitant

of the power to tax, the incidental regulatory effect of the tax is embraced within the power to lay it."

We think it is significant that § 2207, relating to power of appointment property, has been in effect since 1942, and 26 U.S.C.A. § 2206, relating to life insurance, has been in effect since 1918 and, having been applied numerous times in the state and federal courts, no case has been cited, and we have found none, in which the question has heretofore been raised as to whether these sections are in contravention of the Tenth Amendment of the Constitution of the United States. We cite the following cases where one or the other of these sections has been applied: *In re Duell's Will,* 227 N.Y.S. 2d 469, 34 Misc. 2d 589; *Union Bank & Trust Co. v. Bassett,* 253 S.W. 2d 632; *Jeromer v. United States,* 155 F. Supp. 851; *Union Trust Co. v. Watson,* 76 R.I. 223, 68 A. 2d 916.

In our opinion the above sections are merely enabling acts to aid executors and administrators to protect probate estates passing through the hands of such executors or administrators, and are not in violation of the Tenth Amendment of the Constitution of the United States. Neither do they infringe upon matters relating to the descent and distribution of decedents' estates or the probate and administration of such estates. Therefore we concur in the decision reached below with respect to contention No. 1, which is in accord with conclusion of law No. 3 hereinabove set out.

In our opinion the court below committed error in holding that the Nevada Apportionment Act was not applicable in this action.

The state of Nevada has a law entitled "Federal Estate Tax Apportionment Law." It was enacted in 1957 and is contained in sections 150.290 through 150.390 of the Nevada Revised Statutes. Insofar as applicable to this case, the method of proration is set forth in Section 150.330 (1) as follows:

> "The proration shall be made by the Court having jurisdiction in probate of any property in the estate in the proportion, as near as may be, that the value of the property, interest or benefit of each such person bears to the total value of the property, interest and benefits received by all such persons interested in the estate."

In *In re Gato's Estate,* 97 N.Y.S. 2d 171, 276 App. Div. 651, Gato, a citizen and resident of Florida, established two living trusts in New York. He named Guaranty Trust Company of New York as trustee of one of the trusts and another New York bank as trustee of the other. Gato was to receive the income from both trusts for his life, and after his death his five children were to receive the in-

come for their lives, with remainders over to their issue. Gato died intestate on 8 March 1948. The *corpus* of these *inter vivos* revocable trusts created by decedent were included in the gross estate in the tax return for federal estate tax purposes. This appeal involved the trust in which Guaranty Trust Company of New York was trustee.

The Appellate Division of the Supreme Court of New York held: "The Florida court could not exercise jurisdiction over the trustee (in New York) in the absence of consent, and therefore the New York Supreme Court is the appropriate forum. Nor is it disputed that the New York court will apply the domiciliary law of the decedent in a proceeding wherein instructions are sought concerning apportionment of estate taxes. In the present proceeding the domiciliary law is the law of the State of Florida." This decision was affirmed by the New York Court of Appeals, 301 N.Y. 653, 93 N.E. 2d 924.

In the case of *Central Hanover Bank & Trust Co. v. Peabody,* 190 Misc. 66, 68 N.Y.S. 2d 656, it was held that an *inter vivos* trust created by a testator who died as a resident of Connecticut, the trust property being located in New York and the trustee being a resident of New York, the trust must bear its pro rata share of the federal estate taxes in accordance with the proration formula in the Connecticut statute on apportionment of the federal estate tax.

Likewise, in the case of *Re Chase National Bank,* 59 N.Y.S. 2d 848, the testator created a trust in New York during his lifetime. He died a resident of Maryland. The court held the Maryland statute on apportionment controlled and it was applied by the New York court.

In the case of *Re Adams Estate,* 37 N.Y.S. 2d 587, a decedent died a resident of New York. It was held the New York apportionment law was applicable against the devisee of real property situate in New Hampshire.

In *Isaacson v. Boston Safe Deposit & Trust Co.,* 325 Mass. 469, 91 N.E. 2d 334, 16 A.L.R. 2d 1277, the testator created a trust in Massachusetts while he was a citizen of Massachusetts. He later moved to Maine and died while a resident of that state. The Massachusetts court refused to apply the domiciliary rule followed by New Jersey and New York. The court said: "The Federal government could have provided for apportionment of the tax, and did so in certain particulars not reaching the question in this case. U.S.C. (1946 Ed.) Title 26, § 826(b), (c) and (d), 26 U.S.C.A. § 826 (b, c, d)."

The case of *First National Bank of Miami v. First Trust Co. of*

*St. Paul,* 242 Minn. 226, 64 N.W. 2d 524, involved the estate of a testatrix who resided in Florida at the time of her death. The Minnesota court followed the above Massachusetts decision and declined to apply Florida's apportionment law. However, the court apparently was influenced by the fact that it determined it was not the intent of the testatrix for the tax to be apportioned.

In *Doetsch v. Doetsch,* 312 F. 2d 323 (U.S.C.A. 7th Cir.) the decedent was a resident of Arizona. There was included in his estate for federal estate tax purposes a trust whose assets were in Illinois. The plaintiff sought to require the beneficiaries of the Illinois trust to contribute the pro rata part of the federal estate tax. The first question presented to the court was whether the law of Arizona or the law of Illinois was applicable to the question of the proration of the federal estate tax. Since the suit was brought in the state of Illinois, the conflict of laws question was held to be determinable by Illinois law under the doctrine of *Erie R. Co. v. Tompkins,* 304 U.S. 64, 82 L. Ed. 1188. After an exhaustive review of the authorities the court held that the law of the domicile of the decedent was controlling; that is, specifically, the court held that the Illinois court would, if presented with the question, decide that the law of Arizona was applicable. In its opinion the court said:

> "In our opinion the better rule, and the one which the courts of Illinois would follow, is that adopted in New York and New Jersey. When questions of apportionment of estate taxes arise in courts of a state of the *situs* of a trust whose assets are includible in decedent's gross estate for tax purposes, the law of the *situs* refers to the law of decedent's domicile to resolve the questions.
>
> "The rule brings about the desirable result of uniform treatment of all those who benefit from the property included in decedent's gross estate for tax purposes, for regardless of the *situs* of the property there is a single point of reference — decedent's domicile."

For other decisions in accord with the New York rule, see Anno.: Estate Tax — Allocation — Law Governing, 16 A.L.R. 2d 1282; *In re Gallagher's Will,* 57 N.M. 112, 255 P. 2d 317, 37 A.L.R. 2d 149; *Trust Co. of Morris County v. Nichols,* 62 N.J. Super 495, 163 A. 2d 205.

We concur in the view of the court below that the Nevada decree with respect to apportionment was not binding on this defendant, since that court had no jurisdiction over him. However, when these plaintiffs came into North Carolina and instituted this action, in our

BANK *v.* WELLS.

opinion they are entitled to the relief they seek under 26 U.S.C.A. § 2207, as well as under the apportionment statute in effect in Nevada, and we so hold.

In view of the foregoing conclusion, we deem it unnecessary to consider whether or not the tax involved is apportionable under the decisions of this jurisdiction. Even so, this Court has heretofore recognized and applied the doctrine of equitable contribution with respect to gift taxes. *Nebel v. Nebel,* 223 N.C. 676, 28 S.E. 2d 207. This doctrine was cited with approval in *Cornwell v. Huffman,* 258 N.C. 363, 128 S.E. 2d 798.

The defendant contends that if interest is allowed at all, it should be allowed only from 30 January 1965, the date this defendant received a letter from the executor of decedent's estate making formal demand for payment of a pro rata part of the federal estate tax. On the other hand, the plaintiffs contend, and according to the facts found, a copy of the first annual account and report rendered by the executor was sent to defendant by certified mail on 24 October 1963. It was further found that said first account and report constituted notice to defendant of the claim of the executor that the defendant owed to the estate the pro rata part of the federal estate tax attributable to the value of the property which he received by virtue of the exercise of the power of appointment by Pearl K. Wells. There was no exception to the foregoing findings of fact.

In the absence of any evidence tending to show that the executor was not diligent in converting assets of the estate into cash for the payment of the federal estate tax, we hold that this defendant is liable under the doctrine of equitable contribution for his pro rata part of the interest as decreed in the judgment entered below.

The assignments of error directed to the matters discussed in this opinion, as well as the remainder of the assignments of error not discussed, present no prejudicial error which in our opinion would justify the relief sought by the defendant, and they are overruled.

Except as modified herein, the judgment of the court below will be affirmed.

Modified and affirmed.

MOORE, J., not sitting.