BRANCH BANKING AND TRUST COMPANY, AS EXECUTOR OF THE ESTATE OF ABBIE P. CARR, DECEASED, AND AS TRUSTEE UNDER THE WILL OF A. B. CARR FOR THE ABBIE P. CARR TRUST, PLAINTIFF v. JOSEPH A. STAPLES, III, MATTHEW L. CARR, AND JOY H. CARR AS ADMINISTRATRIX OF THE ESTATE OF A. B. CARR, JR., DECEASED, DEFENDANTS

No. COA94-991

(Filed 19 September 1995)

**1. Declaratory Judgment Actions § 8 (NCI4th)— conflicting positions as to source of funds to pay taxes—declaratory judgment proper**

An actual controversy existed so as to confer jurisdiction under the Declaratory Judgment Act where defendants maintained conflicting positions as to the proper source of funds necessary to pay additional North Carolina estate tax due as a result of the inclusion of the value of a QTIP trust in testator's gross estate for federal estate tax purposes, and plaintiff, as executor of the estate, had a duty to obtain the funds and administer their payment.

**Am Jur 2d, Declaratory Judgments § 71.**

**2. Taxation § 160 (NCI4th)— additional North Carolina estate taxes—source of funds**

A QTIP trust was the proper source of funds for payment of the additional North Carolina estate tax due by reason of inclusion of the value of the QTIP trust in decedent's federal taxable estate.

**Am Jur 2d, Inheritance, Estate and Gift Taxes §§ 318, 341.**

Appeal by defendants Carr from judgment entered 6 June 1994 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 23 May 1995.

*Poyner & Spruill, L.L.P., by Curtis A. Twiddy and Thomas H. Davis, Jr., for plaintiff-appellee BB&T.*

*Connor, Bunn, Rogerson & Woodard, P.A., by David W. Woodard, Julie M. Watson, C. Timothy Williford and David M. Connor, for defendant-appellants Matthew L. Carr and Joy H. Carr.*

*Colombo, Kitchin & Johnson, by Michael A. Colombo and Thomas H. Johnson, Jr., for defendant-appellee Joseph A. Staples, III.*

MARTIN, John C., Judge.

The facts giving rise to this declaratory judgment action have been stipulated and may be briefly summarized as follows: A.B. Carr and Abbie P. Carr married in 1970. Pursuant to the terms of a prenuptial agreement, A.B. Carr executed a will in which he bequeathed $40,000.00 to Abbie Carr and left his residuary estate in trust. Abbie Carr was to receive seventy-five percent of the net income of the trust for her lifetime; A.B. Carr's two sons by a prior marriage, A.B. Carr, Jr., and Matthew L. Carr, were to receive the remaining twenty-five percent of the net income. Upon Abbie Carr's death, the trust was to terminate and all of its assets were to be delivered over, in equal shares, to the two sons in fee simple.

A.B. Carr died on 7 July 1985 survived by his wife and by his two sons. Plaintiff, Branch Banking and Trust Company ("BB&T"), qualified as his executor. On the North Carolina inheritance and estate tax return, the full value of the residuary estate was included in A.B. Carr's taxable estate. On the federal estate tax return, seventy-five percent of the residuary estate was treated as "qualified terminable interest property" ("QTIP"), as part of the marital deduction under I.R.C. § 2056(b)(7), resulting in a deduction of $2,504,627.50 for federal estate tax purposes, and a reduction of $1,534,546.00 in federal estate taxes and $18,951.00 in North Carolina estate taxes.

Thereafter, BB&T as executor of A.B. Carr's estate transferred seventy-five percent of the A.B. Carr residuary estate to BB&T as trustee under the will of A.B. Carr for the use and benefit of Abbie Carr (hereinafter referred to as the "QTIP trust") and the remaining twenty-five percent of the A.B. Carr residuary estate to BB&T as trustee under the will of A.B. Carr for the use and benefit of A.B. Carr, Jr., and Matthew Carr. Following establishment of the two trusts, A.B. Carr, Jr., died and Joy H. Carr was qualified as Administratrix of his estate.

Abbie Carr died 12 December 1992, leaving a will which named her son, Joseph A. Staples, III, as her sole residuary legatee. BB&T qualified as executor of her estate. The value of Abbie Carr's net taxable estate for federal estate tax purposes was $985,902.00. However, the inclusion of the value of the QTIP trust ($4,145,874.00) increased her taxable estate to $5,131,776.00 for federal estate tax purposes, increasing the federal tax due by $1,748,773.00. For North Carolina inheritance tax purposes, the value of the QTIP trust was not included in her estate. However, because the value of the QTIP trust

was included in Abbie Carr's federal taxable estate, the state death tax credit under I.R.C. § 2011 increased by $374,202.00, causing an additional estate tax to be due the State of North Carolina, pursuant to G.S. § 105-7, in that amount.

BB&T, in its capacities as executor of the estate of Abbie Carr and as trustee under the will of A.B. Carr for the QTIP trust, brought this declaratory judgment action seeking a judicial determination as to whether the additional North Carolina estate tax should be paid by the estate or by the trust. The Carr defendants, Matthew Carr and Joy Carr, as Administratrix for the estate of A.B. Carr, Jr., moved to dismiss the action pursuant to G.S. § 1A-1, Rules 12(b)(1) and 12(b)(6), on the grounds that there was no actual controversy between the parties to confer jurisdiction upon the trial court under G.S. § 1-253 *et seq.* Alternatively, the Carr defendants sought a declaration that the taxes should be paid from Abbie Carr's estate. Defendant Joseph Staples sought a declaration that the taxes should be paid from the assets of the QTIP trust. The trial court denied the Carr defendants' motions to dismiss and ordered that the additional North Carolina estate tax attributable to the inclusion of the assets of the QTIP trust in Abbie Carr's federal taxable estate be paid by the QTIP trust. The Carr defendants appeal.

---

I.

**[1]** Preliminarily, we must determine whether an actual controversy exists so as to confer jurisdiction under the Declaratory Judgment Act, G.S. § 1-253 *et seq.* An actual controversy is a " 'jurisdictional prerequisite' for a proceeding under the Declaratory Judgment Act . . . ." *Gaston Bd. of Realtors v. Harrison,* 311 N.C. 230, 234, 316 S.E.2d 59, 61 (1984). (Citations omitted.) Where there is no actual existing controversy, the action should be dismissed pursuant to G.S. § 1A-1, Rule 12(b)(6). *Id.* at 234-35, 316 S.E.2d at 62. Whether an actual controversy exists depends on the facts of each case; " 'a mere difference of opinion between the parties' " does not suffice, but neither is it required that one party have an actual right of action against the other. *Id.* at 234, 316 S.E.2d at 61. (Citation omitted.) The Declaratory Judgment Act is liberally construed and administered to accomplish its purpose of affording " 'relief from uncertainty and insecurity with respect to rights, status, and other legal relations . . . .' " *Insurance Co. v. Roberts,* 261 N.C. 285, 287, 134 S.E.2d 654, 657 (1964). (Citations omitted.)

BRANCH BANKING AND TRUST CO. v. STAPLES

[120 N.C. App. 227 (1995)]

G.S. § 1-255 provides, in pertinent part:

Any person interested as or through an executor, administrator, trustee, guardian or other fiduciary . . . in the administration of a trust, or of the estate of a decedent . . . may have a declaration of rights or legal relations in respect thereto:

. . .

(3) To determine any question arising in the administration of the estate or trust, including questions of construction of wills and other writings.

Our Supreme Court has held that an executor of an estate may properly maintain an action under the Declaratory Judgment Act to obtain the advice of the court as to the source of payment of inheritance taxes. *Trust Co. v. Lambeth*, 213 N.C. 576, 197 S.E. 179 (1938).

An actual controversy exists here. The Carr defendants and defendant Staples maintain conflicting positions as to the proper source of the funds necessary to pay the additional North Carolina estate tax due as a result of the inclusion of the value of the QTIP trust in Abbie Carr's gross estate for federal estate tax purposes. BB&T, as executor of Abbie Carr's estate and as trustee of the QTIP trust, takes no position as to which of the competing sources should provide the funds for the payment of that tax, but has a duty to obtain the funds and administer their payment. The controversy between defendants necessitates an interpretation of their rights, status and legal relations under the applicable documents and tax laws, and instruction from the court as to the proper source of funds for the payment of the tax. Thus, jurisdiction exists under the Declaratory Judgment Act and the Carr defendants' motions to dismiss were properly denied.

II.

[2] The substantive issue is whether the QTIP trust is the proper source of funds for payment of the additional North Carolina estate tax due by reason of inclusion of the value of the QTIP trust in Abbie Carr's federal taxable estate. We answer the issue affirmatively and affirm the judgment of the trial court.

A.

Initially, the Carr defendants attempt to argue that there is no additional North Carolina estate tax due from the estate of Abbie Carr because the value of the QTIP trust should not have been included in her estate for federal tax purposes. We decline to consider their argu-

ment. The parties entered into an "Agreed Statement of Facts" in which they stipulated that the value of the QTIP trust was included in Abbie Carr's federal taxable estate as required by I.R.C. § 2044 and, by reason thereof, an additional estate tax is due the State of North Carolina pursuant to G.S. § 105-7. Parties are bound by their stipulations at both the trial and appellate levels. *Baxley v. Nationwide Mutual Ins. Co.*, 104 N.C. App. 419, 410 S.E.2d 12 (1991), *affirmed*, 334 N.C. 1, 430 S.E.2d 895 (1993). Moreover, the issue of whether an additional North Carolina estate tax is due is not raised by the assignments of error contained in the record on appeal. A party may not present for the first time in an appellate brief a question raising issues of law not set out in the assignments of error contained in the record on appeal. N.C.R. App. P. 10(a); *State ex rel. Utilities Comm. v. Nantahala Power & Light Co.*, 313 N.C. 614, 332 S.E.2d 397 (1985), *reversed on other grounds*, 476 U.S. 953, 90 L.Ed.2d 943 (1986).

B.

Resolution of the issue before us requires an understanding of the North Carolina estate tax imposed by G.S. § 105-7 and its relationship to the federal estate tax. G.S. § 105-7 provides, in pertinent part:

(a) A tax in addition to the inheritance tax imposed by this schedule is hereby imposed upon the transfer of the net estate of every decedent . . . where the inheritance tax imposed by this schedule is less than the maximum state death tax credit allowed by the Federal Estate Tax Act as contained in the Code because of said tax herein imposed. In such case, the inheritance tax provided for by this schedule shall be increased by an estate tax on the net estate so that the aggregate amount of tax due this State shall be the maximum amount of credit allowed under said Federal Estate Tax Act. Said additional tax shall be paid out of the same funds as any other tax against the estate.

(c) . . . The amount of the tax as imposed by subsection (a) of this section shall be computed in full accordance with the Federal Estate Tax Act as contained in the [Internal Revenue] Code.

The estate tax imposed by G.S. § 105-7 is essentially a portion of the federal estate tax that has been allocated to our State through the state death tax credit under I.R.C. § 2011.

[I]t has been declared that there is only one tax involved, namely, the federal estate tax, but Congress has permitted the several states to claim part of it if they want to. A taxpayer does not pay

two taxes; he pays one tax, part of it to the Federal Government and part of it to his own state. The states severally share in one "estate tax," and their legislation on the subject merely enables them to avail themselves of the bounty of the Federal Government in handing to them a portion of that tax, levied and assessed not by virtue of state law but of an act of Congress.

Maurice T. Brunner, Annotation, *Ultimate Burden of Estate Tax in Absence of Statute, Will, or Other Provision*, 68 A.L.R.3d 714, 749 (1976). *See also* 5 Boris I. Bittker & Lawrence Lokken, *Federal Taxation of Income, Estates and Gifts* § 132.4, at 123-14 (2d.Ed. 1993) (stating that "[t]he credit can . . . be viewed as a rudimentary revenue-sharing device, by which the federal government diverts funds to the states"). This relationship between the federal estate tax and the North Carolina estate tax is evident from the requirements of G.S. § 105-7 that the latter tax be computed in accordance with the Internal Revenue Code and paid out of the same funds as other estate taxes.

G.S. § 28A-27-2 governs apportionment of the federal estate tax, and, in the absence of a separate statutory provision, we believe applies to the apportionment of the North Carolina estate tax as well. Under G.S. § 28A-27-2(b), apportionment of the tax is controlled by the method prescribed in the decedent's will. In Item Six of Abbie Carr's will, she directed her "Executor . . . to make such claim . . . and recover from the trust established under my husband's Will such amount as may be due my estate by reason of the inclusion in my estate of this qualified terminable interest property . . . ." Her will also explicitly provided that federal estate and state inheritance taxes levied against her estate or the individual beneficiaries thereof "shall not be charged against the share of anyone taking under this Will." Thus, based on these express directions and applicable state law, the trial court correctly determined that the additional North Carolina estate tax due under G.S. § 105-7 should be paid from the assets of the QTIP trust.

Equity also requires that the QTIP trust provide the funds necessary to pay the additional North Carolina estate tax. In *Cornwell v. Huffman*, 258 N.C. 363, 128 S.E.2d 798 (1963), the testatrix, Mrs. Cornwell, had transferred property to a trustee with directions that the income therefrom should be paid to herself and her mother and that the trust should terminate upon her mother's death, or alternatively, that if she predeceased her mother, the trust property should

be divided upon termination of the trust among her descendants *per stirpes*. Mrs. Cornwell's will provided that in the event she predeceased her mother, the property passing under her will should be liable for estate and inheritance taxes as though the testamentary property comprised the entire estate for tax purposes, and that the remainder of such taxes should be paid out of the principal of the trust.

Mrs. Cornwell predeceased her mother. The value of the property passing under her will was much less than the value of Mrs. Cornwell's proportionate share of the trust estate includable in her taxable estate. Consequently, the executors of Mrs. Cornwell's estate brought an action to determine how the inheritance and estate tax liability created by her death should be apportioned. The guardian *ad litem* on behalf of the minor beneficiary of the trust argued that since Mrs. Cornwell "had no interest [in the trust] extending beyond her death, the direction given in her will with respect to the payment of death taxes imposed no obligation on the trust . . . ." *Id.* at 368, 128 S.E.2d at 801. The trial court disagreed and ordered an apportionment of the taxes and directed payment in accordance with Mrs. Cornwell's intention as expressed in her will and in accordance with the equity of the factual situation. *Id.*

The Supreme Court affirmed, noting that because there was no controlling statute, it was appropriate to look at the equity of the situation, and based upon Mrs. Cornwell's express direction in her will with respect to payment of taxes, the executors of her estate had the right to ask the court to apply the rules of equitable contribution. *Id.* at 370, 128 S.E.2d at 802. In affirming, the Court quoted with approval from a portion of the trial court's findings:

> The apportionment and contribution approved and directed by this judgment is in the interest of all the parties including those represented by the guardian ad litem, and such apportionment and contribution are fair, just and equitable and in accordance with the laws of this state.

*Id.* at 370, 128 S.E.2d at 803.

The present case is analogous to *Cornwell, supra.* The inclusion of the value of the QTIP trust in Abbie Carr's federal taxable estate is the sole reason for the imposition of the additional North Carolina estate tax pursuant to G.S. § 105-7. Had BB&T, as executor of A.B. Carr's estate, not made the QTIP election, his estate would have been

**BRANCH BANKING AND TRUST CO. v. STAPLES**

[120 N.C. App. 227 (1995)]

liable for an additional $1,534,546.00 in federal estate taxes and $18,951.00 in North Carolina estate taxes, and consequently, the additional North Carolina estate tax that is the subject of this appeal would not now be due. However, BB&T made the QTIP election, and as a result, pursuant to I.R.C. § 2044, had to include the value of the QTIP trust in Abbie Carr's federal taxable estate. The federal estate tax in the amount of $1,748,773.00, attributable to the inclusion of the value of the QTIP trust in Abbie Carr's federal taxable estate was paid from the assets of the QTIP trust. As in *Cornwell, supra,* Abbie Carr's will contains a clear statement of intent that taxes resulting from the inclusion of the value of the QTIP trust in her taxable estate should be collected from the assets of the trust and not from her probate estate. It is only "fair, just and equitable" that the additional North Carolina estate tax due under G.S. § 105-7 should be paid from the assets of the QTIP trust.

C.

We find no merit in the argument by the Carr defendants that the provisions of the prenuptial agreement between A.B. Carr and Abbie Carr bar BB&T, as executor of the estate of Abbie Carr, from asserting a claim against the QTIP trust for payment of the additional estate tax due the State of North Carolina. The premarital agreement contained reciprocal releases of each party's rights in the property of the other acquired by virtue of their marriage, with the exception of certain property specified in Paragraphs 1, 2 and 3 of the agreement. Paragraph 3 of the prenuptial agreement required that A.B. Carr establish a trust from which Abbie Carr would be paid seventy-five percent of the income for her life. The QTIP trust was established in satisfaction of this requirement. Thus, Abbie Carr's rights in the QTIP trust are specifically excepted from her release of rights in A.B. Carr's property, and the release does not bar a recovery by her estate from the trust of the additional North Carolina estate tax due.

The judgment of the trial court is affirmed.

Affirmed.

Judges JOHNSON and GREENE concur.