Ruffin, J.
 

 No observations are required on the first point, as the counsel for all the defendants agree, that the charitable bequests for religious purposes shall be paid.
 

 There is no doubt on the second point, that the legatee, John B. Ingram, cannot hold the negroes, beneficially, as he takes them on an express trust. And there is as little doubt that the trust expressed is unlawful, as it is very plainly for the emancipation of negroes who are to reside here. The words in this will are much the same as those in the will in
 
 Sorrey
 
 v.
 
 Bright,
 
 1 Dev. & Bat. Eq. 113 — in which, and in numerous other cases, it has been held, that the trust was void, and results. The fund would fall within a general residuary clause, according to the case cited, if the will contained such a clause. The codicil speaks of the residue of the estate having been given by the 13th clause of the will. But when that clause is looked at, it is seen that it does not give any thing as a residue of the estate. The only sense in which the testator could have called what is there given away, a residue, is, that he thought by the previous gifts in the will he had exhausted his estate, saving only as to those parts of it which he wfas disposing of by that clause. Having nothing else to dispose of but the negroes in North Carolina, he considered that in giving them he was giving the residue of what he was worth. But he did not give them as the residue of his estate, nor even as a general residue of his negroes, since by the exception in that item of such negroes as he might thereinafter dispose of otherwise, and by the subsequent disposition of some of those negroes, he turns the gift into one of'a special residue, if it be a residue at all. Indeed, upon the words “All
 
 my
 
 negroes
 
 in
 
 
 *184
 

 this State
 
 of which I may die in possession,” it would rather seem to be a specific legacy than residuary.
 
 Nisbèt
 
 v.
 
 Murray
 
 5 Ves. 150;
 
 Everitt
 
 v.
 
 Lane
 
 2 Ired. Eq. 548. In either, as put, the negroes excepted, and afterwards disposed of for emancipation can never fall back into it, whether they are effectually disposed of or not in the subsequent part of the will. Those negroes only are given in the 13th clause which are not taken out of it; and those excepted turn out not to be legally disposed of, and, consequently, result to the next of kin.
 

 The question then arises, on which the parties ask the declaration of the Court, which of the next of kin succeed to that surplus, and in what proportions? Naturally, they succeed to such an interest as next of kin do when there is a total intestacy. They take, because as to this fund, the deceased is intestate, and there is no other rule for the distribution of it but that furnished by the statute of distributions. In England, it formerly belonged to the executor, unless upon the will it was seen he was an executor in trust, as he was called ; and every executor is such an executor here since the act of 1789. It was contended, however, at the bar, that the terms in which the legacies are given to Benjamin Ingram and Bennett repel their claim, and that of the wife of the latter, to any part of this surplus; and the point was argued with learning and ability by the counsel for the other next of kin. Vet, it has failed to satisfy the Court of the correctness of the position, and our opinion is to the contrary. If the question concerned the Bennetts alone, it might be of some interest to enquire, whether or not the wife is within the terms of exclusion used in this will. But, as the opinion of the Court is, upon the general question, in favor of both Benjamin Ingram and the husband, Bennett, it is not worth while to consider the particular point respecting the wife. It was admitted in the argument, that the-exclusion of all the next of kin, would not defeat them of the surplus — though it was said the exclusion of one among two or more would be effectual as to that one. Now, the ground on which the,next of kin take, in the
 
 *185
 
 first case, is, that the testator has left the surplus undisposed of, and they must take, because there is no one else who can. Then, it is plain, they take by the law, and not by the will. The same reason applies as directly and conclusively where there is an exclusion of one of several next of kin, and the contrary doctrine is absolutely inconsistent with the nature of the fund, which is a residue undisposed of — not touched by the will, and left to the law alone. If, then, the exclusion of one be effectual, it must be because, by reason of the exclusion, there is a gift by implication to the other next of kin, and they take as general residuary legatees. The interpolation of such a general residuary clause upon implication is inadmissible upon any proper principle of construction. Such an implication could only be justified upon the clearest intention, and in this case, it is plain, the testator thought, he had given away all his estate, and the partial intestacy arises, as it generally does, from a defect in one of the dispositions from which a surplus arises, which was not in his contemplation, and about which he had, therefore, no particular intentions. Among the numerous cases adduced in the argument, there is but one directly in point — that of
 
 Vachell
 
 v. Breton, 1 Bro. Parl. Cases, 167. There, the testator gave ton shillings, each, to two children, whom he called the children of his wife, and who, it appears, were born (luring his separation from her, and he added to the gift the words “and no more,” and it was decreed that a surplus should be distributed amongst the testators next of kin, excluding the children. It may be observed on that case, in the first place, that the decree in the court of chancery was the other way;
 
 Vachell
 
 v. Jeffries, Pr. in. Ch. 169, and that no reasons are given for the judgment, and it does not appear that any one of the Judges gave an opinion. It seems to have been decided simply by a vote of the Lords. What influenced that body one cannot undertake to say. It may have been that the children were not deemed akin to the testator; for, although born in wedlock, they might have been bastards, if the separation was of a kind to exclude access ; or it may have been an act of arbitrary ex-
 
 *186
 
 elusion on account of an obvious suspicion of the imposition of spurious issue on the testator, without considering the question of bastardy in a legal point of view; or ma3r have been on the construction of the will. If the decision went on either of the two first grounds, it has no application here. If on the last, it seems to us not to be law, for the reasons alread3r given. The authority of the case is to be further doubted, because it has not been followed, as far as our researches extend, nor mentioned with approbation, by any Judge or respectable commentator. On the contrary, an undisposed of residue has alwa3rs been divided among all the next of kin, as in a case of total intestac3r, with the exception, only, as to hotchpot, and that because the statute which provides for it has only a total intestacy within its purview. Besides, the recent decision in
 
 Johnson
 
 v. Johnson, 4 Beav. 318, lays down the law in direct opposition to the case in the House of Lords. In that case, the testator cut off his widow and one of his daughters from any part of his property, and directed that they should not recieve any benefit therefrom; but he made no disposition of it. It -was held, nevertheless, that the negative words could not exclude one of the next kin, and therefore that the widow and daughter were entitled to their share of the residue. That such was well understood to be the state of the law in England, is dedncible from the recital in jthe modern statutes in that country, converting executors into trustees, (in respect of an3r residue not expressly disposed of,) for the persons who would be entitled to the estate under the statute of distributions, if the testator had died intestate. Our act of 1789, though not so much in detail, is the same in substance, in providing that the executor shall retain only Ins charges and disbursements, and that at the end of two years, all the estates remaining, shall be delivered and paid over to such persons to whom the same may be due by law or the will of the deceased. That due by the will is whatever the will disposes of, and that due by law is, necessarily, that not disposed of by the will, and is the surplus now under consideration. By what law is it due ? There is no other that can be meant but
 
 *187
 
 tlie statute of distributions. As, therefore, the next of kin. take in this case bylaw, negative words cannot exclude them, and they must all take. Although in
 
 Jones
 
 v.
 
 Masters,
 
 3 Mur. Rep. 110, it was not the precise point before the Court in the action at law, yet the remarks of Judge Henderson, in alluding to it, incidentally, denote very explicitly his opinion on it. He said that although one could not claim as legatee under a will in opposition to the intention of the testator, yet there are many cases, where the next of kin take in express opposition to the words of the will; because they take under the law, and not under the will,' and their right can be defeated only by the substitution of some person to take in their place, and not by a declaration that they shall not take.
 

 The Court concludes, therefore, that Benjamin Ingram and Bennett and wife, take their shares, of this fund, with the other children of Lemuel Ingram, as representing their father.
 

 There is no reason for not putting the children of Lemuel Ingram to the election imposed on them in the codicil. It is reasonable for a testator to say, when he makes a gift to one, that the gift is in bar of a claim the donee has, or may set up, against him, and, that the legatee must release the claim, before he can recover the legacy. The election here goes to all the provisions in the will, in favor of Benjamin Ingram and Bennett, and the heirs of Lemuel Ingram ; for, although, the codicil recites only the provision made in the 13th clause, yet the forfeiture, upon preferring a claim arising out of the testator’s administration of Lemuel’s estate, is not confined to the legacies given in that clause, but it is added, “and all interest in my estate.’ The election of each one is to be made for him or herself, and does not affect any other. • The codicil is not, in every part, distinct on the point, but that is the effect as a whole ; for, in requiring releases, it directs that “ each one of them applying for his legacy, must release all demands he may have,” before the executor shall pay their “ respective portions,” and the forfeiture is of “ all right to his, her or their legacies aforesaidfrom which, the inference is, that the act of each is to operate on his several interest. ,
 

 
 *188
 
 As to the time within which those persons are to execute releases, the testator, having limited none, it is to be determined by the general rule of Equity. It is the course of the Court not to put one to his election, until the estate is in such a condition as to enable the party to see on which side his interest lies ; for Equity does not put a surprise on persons in this situation, but leaves them to decide after an opportunity of comparing the value of their original rights with that derived under the will. Therefore, the executor has no right to call for an election until the accounts of the testator’s estate shall be so far made up as to satisfy the legatees on those points, and, indeed, if necessary for that purpose, the Court would, at the instance of either party, direct such an account in this cause.
 
 Newman
 
 v. Newman, 1 Bro. C. C. 186.
 

 If any of the parties should elect not to take under the will, the legacies to those parties would also fall into the surplus, because the will does not, in case of a forfeiture, give the legacies over, nor in any way dispose of them, since, the gifts are not of the whole share to such of the legatees as may release, but they severally take a share of the fifth part and no more.
 

 It arises from the nature of an undisposed of surplus in the hands of an executor, that it should be the primary fund in the payment of debts and pecuniary legacies, as the testator must always be supposed to intend that his legatees shall have their legacies without abatement, if there is any other fund for the satisfaction of creditors and general legacies. A surplus is such a fund, just as lands descended stand before those devised in respect to. charges on both.
 

 Pee Curiam,. Decree accordingly.