COLWELL ELECTRIC COMPANY v. KALE-BARNWELL REALTY & CONSTRUCTION CO.

(Filed 6 July, 1966.)

**1. Trusts § 13—**

Where the grantee in a deed promises, at or before acquiring legal title, to hold it for the benefit of a third person, or declares that he will hold the land in trust for such third person, a valid express trust is created, even though the deed contains no provision with reference to any right of such third person.

**2. Trusts §§ 17, 18—**

A resulting or a constructive trust may be established by parol evidence which is clear, strong and convincing.

**3. Trusts § 14—**

If the acts, declarations and assurances of the grantee or the beneficiary in a deed of trust, at or before the transfer of a legal or beneficial title to him, are such as to lead a third party reasonably to believe that the contemplated conveyance will be drafted so as to confer upon him an interest superior to that of the grantee or the *cestui,* and if such third person parts with a thing of value or otherwise sustains a legal detriment, a court of equity will declare a constructive trust for the benefit of such third person.

**4. Same—**

A constructive trust rises by operation of law when the grantee in a deed or the *cestui* in a deed of trust obtains title or priority of lien in violation of some duty, express or implied, owed to the one who is equitably entitled, and such trust will be declared regardless of the intent of the parties or the absence of actual fraud.

**5. Registration § 3—**

    Recital in a deed of trust that it should constitute a lien junior to the lien of a deed of trust to another person, without sufficiently identifying the deed of trust to such third person, cannot override priority of registration.

**6. Trusts § 19—**

    Where the grantor of lots agrees that the purchase money deed of trust should be junior to a deed of trust to a bank lending money for the construction of houses on the lots, with knowledge that the construction loan could not be obtained unless the lender was given a first lien, and the deed and the deeds of trust are delivered to the office of the registrar of deeds with direction that they be recorded so as to effectuate the agreement, but through inadvertence the purchase money deed of trust is recorded prior to the deed of trust for the construction loan, equity will declare a constructive trust so as to give priority to the deed of trust securing the construction loan.

**7. Same; Receivers § 12—**

    Where the receiver has sold land of the debtor free from lien so that the liens attach to the proceeds of the sale in the receiver's hands, the receiver must give priority of payment to the holder of the lien having priority by reason of a constructive trust declared by equity to accomplish the ends of justice, notwithstanding such lien was recorded subsequent to the registration of another deed of trust on the same property.

MOORE, J., not sitting.

APPEAL by claimants, Carl A. Wicker and wife, Vera Wicker, from *Johnson, J.,* November 1965 Civil Session of ALAMANCE.

This is an action for the appointment of a receiver for the defendant on the ground of insolvency. A receiver was so appointed. Among the assets coming into the hands of the receiver were five lots upon each of which the defendant had commenced and partially completed the construction of a dwelling house. At the time of the appointment of the receiver, there was recorded in the office of the Register of Deeds of Alamance County, as to each such lot, a deed of trust, executed by the defendant, conveying the lot to a trustee to secure the payment of a note, made by the defendant and payable to Carl A. Wicker and Vera Wicker, his wife. There was also then recorded there, as to each of these lots, a deed of trust conveying it to a trustee to secure the payment of a note, made by the defendant and payable to the North Carolina National Bank.

The Wickers and the Bank filed their respective claims with the receiver, each claiming the first lien on each of the respective lots and the uncompleted building thereon. The properties were sold by the receiver free of all liens and the claims, as to liens, were transferred to the proceeds of the receiver's sales. These are not sufficient, in the case of any of the lots, to pay both claims in full. As to each

lot the receiver, in his report to the court, allowed priority to the claim of the Bank over the claim of the Wickers, who filed exceptions to the report.

By consent, the exceptions were heard by the judge, sitting without a jury. The exceptions of the Wickers were overruled, thus affirming the determination by the receiver that the deed of trust given to secure the Bank is entitled to priority over that given to secure the claim of the Wickers. From the judgment so entered, the Wickers now appeal to this Court. Upon this appeal the sole question is whether the claim of the Bank or the claim of the Wickers is entitled to priority in the proceeds of the receiver's sales. The facts are the same as to each of the five lots. Neither the plaintiff, the defendant, the receiver nor any other claimant participated in the appeal to this Court.

The following is a summary of the material facts found by the trial judge and recited in his judgment, the numbering and order of the findings being rearranged by us:

(a) Carl A. Wicker and wife, Vera Wicker, originally owned the lots and sold and conveyed them to the defendant by warranty deeds. As to each lot, 20% of the purchase price was paid in cash to the Wickers and a note for the balance was made to them, this being secured by a deed of trust to W. L. Shoffner, trustee.

(b) Each deed of trust so made to Shoffner by the defendant provided:

"This is a junior lien in favor of a Deed of Trust to E. H. Foley, Trustee for North Carolina National Bank of Burlington, North Carolina."

(c) The same attorney prepared the deeds from the Wickers to the defendant, the notes of the defendant to the Wickers, the deeds of trust securing them and the notes of the defendant to the Bank and the deeds of trust securing it. All of the papers were executed contemporaneously.

(d) Prior to the preparation of these instruments, and at the time of the deliveries thereof, the Wickers knew that each deed of trust securing them was to be subordinated to a deed of trust to secure the Bank, which was to make a construction loan to the defendant for the construction of a house upon the lot so conveyed to the defendant by the Wickers. The Wickers were advised by the defendant that the only means of obtaining from the Bank funds for such construction was for the defendant to give the Bank a first lien upon the property; that is, a lien prior to the lien of the deed of trust to secure the payment to the

Wickers of the balance of the purchase price of the lot. With that understanding, the Wickers executed their deed to each lot to the defendant and received each note and deed of trust from the defendant.

(e)  The Bank entered into a binding agreement with the defendant to lend to it money to be used in the construction of improvements upon the land conveyed to the defendant by the Wickers. The money was to be advanced by the Bank in installments as each building progressed and reached certain specified stages. As to each house, the repayment of such loan was to be secured by a first deed of trust upon such house and lot.

(f)  The arrangement between the Bank and the defendant was a bona fide agreement to secure the repayment of advances by the Bank which were to be used by the defendant in the construction of houses upon the specific properties described therein; the Bank did, in fact, make bona fide advances with respect to each lot here involved and the defendant executed and delivered the notes and deeds of trust under which the Bank claims.

(g)  There was no understanding, agreement or contract of any kind, at any time, between the Bank and the defendant, or between the Bank and the Wickers, or any other claimant, that the Bank would see to the application by the defendant of any funds advanced to it by the Bank.

(h)  After the execution of all of the papers, the attorney who prepared them carried all of the deeds and the deeds of trust to the office of the Register of Deeds and handed them to the clerk of such office simultaneously, giving such clerk, as to each lot, instructions to record the deed first, the deed of trust securing the Bank second, and the deed of trust securing the Wickers third.

(i)  Contrary to the instructions of the attorney and contrary to the understanding of the respective parties, the personnel of the office of the Register of Deeds, by error, failed to register and record the instruments as so instructed but, as to each lot, recorded the deed first, the deed of trust securing the Wickers second, and the deed of trust securing the Bank third. The recorded instruments and the records of the Register of Deeds' office show that the deed of trust securing the Wickers was filed for registration five minutes prior to the deed of trust securing the Bank.

Upon the foregoing findings, the trial judge concluded, as a matter of law, that as to each lot the deed of trust securing the Bank

constituted a valid lien superior to the lien of the deed of trust securing the Wickers and, consequently, the claim of the Bank was entitled to payment in full out of the proceeds of the sale of the lots by the receiver in preference to any payment upon the claim of the Wickers.

The evidence offered by the Wickers tends to show that these transactions were all closed at a conference in the office of the attorney who drafted the documents, which conference was attended by Mr. Wicker who then received the down payment made by the defendant for the lots. At that time it was explained to Mr. Wicker that he would receive a second deed of trust upon each lot to secure the balance of the purchase price of such lot. The defendant explained to Mr. Wicker that the only way it could handle the property was for the Wickers to take, as security for the balance due them, a second deed of trust; otherwise the defendant could not get from the Bank the loan needed for its construction projects. Since the instruments were recorded, Mr. Wicker has retained in his possession the deeds of trust under which he and Mrs. Wicker now claim.

The Bank offered evidence tending to show that this method of handling the entire transaction was explained to Mr. Wicker by the attorney who drafted the several instruments. This attorney testified that he took the several instruments to the office of the Register of Deeds for registration and delivered them to that office with instructions, as found by the court, concerning the order in which they were to be placed upon the record. While he does not expressly so state, the inference from his testimony is that all of the documents were physically delivered to the office of the Register of Deeds at the same time. This attorney did not supervise or have responsibility for supervising the disbursements of funds advanced by the Bank to the defendant.

In rebuttal, Mr. Wicker testified that Mr. Kale, an officer of the defendant, in negotiating these transactions, stated to Mr. Wicker that the defendant would use the money advanced by the Bank to build a house upon each lot which would be of greater value than the amount of the loan by the Bank. The court, upon objection to this testimony by the Bank, ruled that it would be admissible only with reference to the substance of the claim of the Wickers against the defendant and not with reference to the question of priority as between the claim of the Wickers and the claim of the Bank. Kale did not tell Mr. Wicker which bank would make the loan to the defendant or what the amount thereof would be.

*W. R. Dalton, Jr., for claimant appellants.*
*W. Clary Holt and Sanders & Holt for North Carolina National Bank, appellee.*

LAKE, J.  When the grantee in a deed, conveying the legal title to land, promises, at or before so acquiring the legal title, to hold it for the benefit of a third person, or declares that he will hold the land in trust for such third person, a valid, express trust is thereby created though the deed contains no provision with reference to any right of such third person. *Avery v. Stewart,* 136 N.C. 426, 48 S.E. 775; *Sykes v. Boone,* 132 N.C. 199, 43 S.E. 645. Such trust may be established by parol evidence which is clear, strong and convincing.

Though there is no such express promise or declaration, if the acts, declarations and assurances of the grantee, at or before the transfer of the legal title to him, are such as to lead a third party reasonably to believe that the contemplated conveyance will be drafted so as to confer upon him a beneficial interest in the property superior to that of the grantee and those actually named in the conveyance as beneficiaries thereof, and if such third person, in reliance upon this representation, parts with a thing of value or otherwise sustains a legal detriment, a court of equity will fasten upon the legal title so conveyed a constructive trust for the benefit of such third person. "A constructive trust * * * is a trust by operation of law which arises contrary to intention and *in invitum,* against one who * * * in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." 54 Am. Jur., Trusts, § 218. In order for a constructive trust to arise it is not necessary that fraud be shown. *Speight v. Trust Co.,* 209 N.C. 563, 183 S.E. 734. It is sufficient that legal title has been obtained in violation, express or implied, of some duty owed to the one who is equitably entitled. *Bryant v. Bryant,* 193 N.C. 372, 137 S.E. 188. "A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." Lee, North Carolina Law of Trusts, § 11a. Of necessity, the circumstances out of which such constructive trust arises may be shown by parol evidence.

Here, the evidence, including that of Mr. Wicker, himself, and of Mr. Shoffner, the trustee in the deed of trust securing the note to the Wickers, is abundantly sufficient to support each finding of fact by the trial court and to show that the claim of the Wickers and the claim of the Bank arise out of a unified plan for the acquisition and development of the Wicker properties by the defendant

with the financial assistance of the Bank. The deeds from the Wickers to the defendant, the notes by the defendant to the Wickers, the deeds of trust from the defendant to Shoffner, trustee for the Wickers, and the deeds of trust from the defendant to Foley, trustee for the Bank, were all contemporaneously prepared by the same draftsman. After all the documents were executed, the deeds and deeds of trust were all taken by him to the office of the Register of Deeds for registration there. It was clearly understood and agreed that without construction loans from the Bank to the defendant, the defendant could not and would not purchase the Wicker lots for the agreed price. It was further clearly understood and agreed by the Wickers and Shoffner, trustee, prior to the conveyance of the legal title to the properties to Shoffner, trustee, that the legal title to the land would be conveyed to Shoffner as security for the Wicker notes, but that the beneficial interest of the Wickers in the land would be subordinate to the beneficial interest of the Bank. Language was inserted in the deed of trust to Shoffner, trustee, which was intended to accomplish this purpose. This provision did not sufficiently identify the deed of trust to Foley, trustee for the Bank, to comply with the requirements of *Hardy v. Fryer,* 194 N.C. 420, 139 S.E. 833, the amount of the encumbrance held by the Bank and intended to be given priority not being stated. However, this statement in the deed of trust, under which the Wickers claim, is further evidence of the intent and understanding of the parties at and prior to its execution.

For the purpose of carrying out the contemplated program, including the establishment of a prior lien upon the property in favor of the Bank, Shoffner, the draftsman of the instruments, carried them all to the office of the Register of Deeds together and delivered them to a clerk in that office. Contrary to his instructions to such clerk, the deed of trust to Shoffner, trustee, for each lot was marked by the clerk as having been filed for registration before the deed of trust upon such lot to Foley, trustee for the Bank. If, as is clearly not the case, Shoffner had, with intent to defraud the Bank and to violate the clear agreement and understanding of all the parties, actually filed the deed of trust to him ahead of the deed of trust to Foley and, in drafting the instrument to him, had omitted any reference to the deed of trust securing the Bank, equity would fasten a constructive trust, in favor of the Bank, upon these properties, which trust would prevail over any right of Shoffner and the Wickers. The fact that the reversal in the order of filing of the papers was the result of inadvertence rather than fraud does not prevent the claim of priority for the Wicker note from being directly contrary to the understanding of the parties and contrary to good conscience. Equity will, therefore, raise a constructive trust in favor of

the Bank "to satisfy the demands of justice." 54 Am. Jur., Trusts, § 218.

This is not a situation in which one acquires legal title to property upon which there is an existing but unrecorded encumbrance which is simply noted in the recorded, subsequent conveyance. See: *Bourne v. Lay & Co.*, 264 N.C. 33, 140 S.E. 2d 769; *Lawson v. Key*, 199 N.C. 664, 155 S.E. 570; *Story v. Slade*, 199 N.C. 596, 155 S.E. 256. It is not merely a matter of notice of the deed of trust under which the Bank claims. Here we have contemporaneously executed papers, parts of a unified plan, an agreement that the one deed of trust is to have priority over the other, and a bona fide but unsuccessful effort to record both documents so as to accomplish that purpose.

Although it is not shown in the record that Mrs. Wicker was present at the time the various papers were executed and delivered to Shoffner for registration, or that she had actual knowledge of the agreement that the Bank's claim was to have priority of lien, she is now claiming the benefit of the notes and deeds of trust given to her husband at the conference at which these documents were all signed and the relative position of the liens was explained. While a husband, as such, is not the agent of his wife, here the husband was handling the transaction, including the delivery of the deed signed by her as one of the grantors. She cannot claim the benefits of the notes received by him as her agent in this transaction and disavow his agency with reference to the agreement as to priority of the liens, without which the transaction would not have been consummated. *Dobias v. White*, 240 N.C. 680, 83 S.E. 2d 785; *Tomlins v. Cranford*, 227 N.C. 323, 42 S.E. 2d 100.

It is not necessary to consider the question of whether the record shows such a mistake in drafting the deed of trust to Shoffner, trustee, as to justify an order reforming it so as to include a more perfect description of the deed of trust securing the Bank. Nor is it necessary to determine the right of the Bank to have the record in the office of the Register of Deeds corrected with reference to the time of the filing of the respective deeds of trust for registration. The land has been sold and conveyed by the receiver and neither of these matters affects the title of the purchaser from him. The sole question before us relates to the order of distribution of the proceeds now in the hands of the receiver. The judgment of the superior court is in accordance with the principles of equity above stated.

We have examined each of the assignments of error and find no reason therein to disturb the judgment.

Affirmed.

MOORE, J., not sitting.