JOSIE M. WELLS, Guardian of REDMOND S. WELLS, v. LILLIAN KENT DICKENS; PAUL V. PARKS, JR.; and THE PLANTERS NATIONAL BANK & TRUST COMPANY and LILLIAN KENT DICKENS, Ancillary and Co-Executors of the Estate of PEARL K. WELLS

No. 277

(Filed 23 August 1968)

1. Trusts §§ 13, 17— resulting trust — oral agreement by grantee in a deed to hold land in trust

　　Where the grantee in a deed promises at or before acquiring legal title to hold the property conveyed for the benefit of a third person, or declares

that he will hold the land in trust for such third person, a valid express trust is thereby created even though the deed contains no provision with reference to any right of such third person; such trust may be established by parol evidence which is clear, strong and convincing.

**2. Wills § 2— contract to devise to third party beneficiary**

An agreement that a third party beneficiary shall have land at the death of the promisor implies his promise to devise or convey the property so as to effectuate the contract between the promisor and the promisee.

**3. Trusts § 10; Wills § 40— trust beneficiary having general power of appointment by will — possible appointees**

Where the income beneficiary of a trust is given a general power of appointment to dispose of the *corpus* of the trust by her will as if she owned the *corpus* free of the trust, she may devise the property to her own estate or to any persons or institutions of her choice.

**4. Wills § 64— definition of equitable election**

An election, in equity, is a choice which a party is compelled to make between the acceptance of a benefit under a written instrument and the retention of some property already his own which is attempted to be disposed of in favor of a third party by the same paper.

**5. Wills § 64— purpose of doctrine of equitable election**

The doctrine of equitable election rests upon the principle that one claiming under any document shall not interfere by title paramount to prevent another part of the same document from having effect according to its construction.

**6. Wills § 64— purpose of doctrine of election as applied to wills**

The doctrine of election as applied to wills is based on the principle that one cannot take benefits under the will and at the same time reject its adverse or onerous provisions.

**7. Wills § 64— doctrine of elections applied to wills**

The doctrine of election applies where a will purports to dispose of property belonging to the beneficiary and, inferentially, to bequeath or devise other property in lieu of it.

**8. Wills § 64— doctrine of election applied to wills**

An election is required only when the will confronts a beneficiary with a choice between two benefits which are inconsistent with each other.

**9. Wills § 64— doctrine of election applied to wills**

The doctrine of equitable election applies when a testator purports to devise specific property not owned by him to a person other than the true owner and provides other benefits for the owner of such specific property, but the doctrine does not apply if it appears that the testator erroneously considered the specific property devised to be his own.

**10. Wills § 64— doctrine of election — choice between property devised and property testatrix had contracted to devise**

Where testatrix devised to third persons specific property which she allegedly held in trust for plaintiff and which she allegedly contracted to

devise to plaintiff, and testatrix exercised a general power of appointment in devising to plaintiff a fee in other property in which plaintiff would have taken an equitable life estate under a trust if testatrix had not exercised her power of appointment, testatrix' will requires plaintiff to elect between the property devised to him and the property testatrix had contracted to devise to him.

**11. Wills § 64— intent to put devisee to an election may be inferred from dispositions in the will**

It is not required that testator spell out his intention to put a devisee to an election when the nature of his dispositions manifest that intent.

**12. Wills § 64; Insane Persons § 10— doctrine of election enforceable against one under disability**

The doctrine of election can be enforced against persons under disability.

**13. Wills § 64— election implied from devisee's dealings with property devised**

Where testatrix devised specific property to third persons in breach of her contract to devise the property to plaintiff, but in lieu thereof testatrix devised under a power of appointment a fee to plaintiff in other property in which plaintiff would have had an equitable life estate under a trust if testatrix had not exercised her power of appointment, plaintiff implied an election to accept the fee devised to him by (1) obtaining a judgment declaring that he owned the property devised to him by testatrix in fee, freed of the trust, (2) obtaining a judgment awarding him a portion of the rents accruing from the property devised to him during the year of testatrix' death and accepting such rents, and (3) failing to contend that he had not accepted the devised property in an action brought against him by testatrix' personal representative to recover the federal estate tax attributable to the property devised to him by testatrix.

**14. Wills § 64; Insane Persons § 4— guardian of incompetent cannot make election for ward without court approval**

The guardian of an incompetent cannot make an election in behalf of the ward to take under or against a will without the direction and approval of a judge of the Superior Court.

**15. Wills § 64; Insane Persons § 4— election for one under disability — petition of guardian — hearing by court — appointment of special master — order by court**

When an election is required of one under disability, upon petition of the guardian or other interested party, the judge will hear evidence sufficient to enable him to determine which election is in the ward's best interest, and if he deems it necessary the judge may appoint a special master to take an account, hear evidence, and report his findings to the court; the judge will then make findings of fact and enter an order directing which election the guardian shall make.

**16. Wills § 64— election between devise and unadjudicated claim**

When a beneficiary is required to elect between a devise or bequest and property devised to a third person to which he has an unadjudicated claim, the devisee-claimant is not required to elect until his claim has

been adjudicated in his favor, but the obtaining of a judgment establishing title in the claimant constitutes his election to take the property for which he sued.

17. **Wills § 64;     Insane Persons § 4— election by incompetent between devise and unadjudicated claim — permission by court to pursue claim**

When an incompetent beneficiary is required to elect between a devise and property devised to a third person to which he has an unadjudicated claim, the guardian of the incompetent beneficiary must secure the consent of the court before proceeding with an action to adjudicate the ward's claim.

18. **Parties §§ 3, 8— action to establish trust in devised lands — joinder of additional beneficiaries**

In an action to establish a trust in lands allegedly devised to defendants in breach of testatrix' contract to devise the property to plaintiff, his brother and sister, plaintiff's brother and sister should be made parties so that defendants' title to the property may be adjudicated in one suit.

19. **Parties § 3;     Descent and Distribution § 1;     Executors and Administrators § 6— action to establish trust in devised lands — executors not proper parties**

In an action to establish a trust in lands allegedly devised to defendants in breach of testatrix' contract to devise the property to plaintiff, his brother and sister, the testatrix' executors are not proper parties since the title to land of decedents does not vest in their executors but vests in their heirs at law or devisees.

BRANCH and HUSKINS, JJ., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *May, S.J.*, 30 January 1967 Civil Session of WILSON, docketed and argued as Case No. 273 at the Fall Term 1967.

Action to establish a trust in lands allegedly devised to the individual defendants in breach of testatrix' contract to devise the property to plaintiff, his brother and sister.

The following facts are not in dispute: Plaintiff, Redmond S. Wells (R. S. Wells) is incompetent as the result of congenital injuries. He brings this action by his guardian, Josie M. Wells. R. S. Wells, Alice Wells Romanek, and William M. Wells are the children born to the marriage of Josie M. Wells and William M. Wells, Sr. (Wells).

In 1941, Wells obtained a divorce from Josie M. Wells and married Pearl K. Wells (testatrix). Until the death of Wells in 1961 they lived together in Nevada, where testatrix continued to reside until her death in 1962. No children were born of this marriage.

By an instrument dated 3 February 1956, Wells created an *inter vivos* trust (Pearl K. Wells Trust) for the benefit of testatrix. Dur-

ing her lifetime, she was entitled to the income from the corpus, which consisted largely of farmland in North Carolina, and the trustee, Planters National Bank & Trust Company, had the power to invade the corpus for her support. At her death, the trust was to terminate, and the remaining corpus become the property of Wells' three children "share and share alike absolutely and in fee simple." Notwithstanding this limitation over, Wells gave to his wife "the power to dispose of the entire corpus of this trust, free of the trust, by her will, but only by making specific reference to this power, as she may see fit, with the same effect as if she were the owner of said corpus free of the trust."

On 6 February 1956, Wells amended the Pearl K. Wells Trust by a provision that the undivided interest of R. S. Wells "in the trust assets remaining at the termination of the trust shall vest in Planters National Bank & Trust Company of Rocky Mount, North Carolina, as trustee for a trust known as the 'R. S. Wells Trust,' " which Wells had created on 4 February 1956. The income from this trust was for "the proper support" of R. S. Wells and his legal dependents during his life. At his death, the corpus was to be distributed to his heirs and distributees.

On 7 September 1961, Wells died testate, domiciled in Nevada. His will, dated 4 February 1956, devised and bequeathed to defendant Bank as trustee one-half of his "adjusted gross estate as finally determined for federal estate tax purposes, less the aggregate value of other property which qualified for the marital deduction. . . ." In the same item, he referred to the power of appointment he had given his wife in the instrument creating the Pearl K. Wells Trust and stated, "These provisions are reimposed by this will." The remainder of his net estate Wells devised to his three children. He provided, however, that the share of R. S. Wells should be managed and disposed of under the terms of the R. S. Wells Trust. In satisfaction of the marital-deduction devise, Wells' executor conveyed certain farmlands located in North Carolina, including the farms identified as the "Barron farm," the "Kansas-Weaver-Langley farm," and the "Moore farm," to the Pearl K. Wells Trust.

On 28 June 1962, testatrix died a resident of Nevada. Defendant Bank is her ancillary administrator in North Carolina. Her will, dated 3 May 1961, contained the following provisions:

"SEVENTH: During my lifetime my husband gave me a gift of certain real property known as the Cobb Farm in North Carolina. . . . I give, devise and bequeath the Cobb Farm, share and share alike, to my sister, Lillian Kent Dickens, and to her son, Paul V.

Parks, Jr., or if one be deceased then I give, devise and bequeath the Cobb Farm to the survivor of them." (The transcript contains no evidence as to the value of this farm.)

"EIGHTH:  A power of appointment was created for me under the Last Will and Testament of my husband, William Mercer Wells, and I hereby exercise that power of appointment. This power of appointment shall be deemed exercised under this paragraph whether or not I predecease my husband, William Mercer Wells. Pursuant to that power of appointment, I hereby give, devise and bequeath any farmland in North Carolina, except the Cobb Farm which I have heretofore provided for distribution to my sister and her son, to the three children of my husband, William Mercer Wells, share and share alike. . . ." The factual statement in *Bank v. Wells*, 267 N.C. 276, 279, 148 S.E. 2d 119, 121, disclosed that the property which plaintiff acquired by this devise was valued at $91,208.33 for federal-estate-tax purposes.

The Cobb Farm was conveyed in fee simple to testatrix by Wells by deed of gift, dated 6 February 1956 and recorded in Book 605, page 626, Wilson County Registry.

Plaintiff alleges: In consideration of Wells' conveyance of the Cobb Farm to her, "prior to and contemporaneously with the conveyance," testatrix agreed that, subject to her right to use the property during her lifetime, she would hold it for the use and benefit of Wells' three children, to wit: W. M. Wells, Jr., Elizabeth Wells Romanek, and Redmond S. Wells, share and share alike. Testatrix agreed "to transfer or appoint the same" to Wells' children and, pursuant to this understanding, Wells and testatrix executed "mutual wills" disposing of their estates in accordance with this agreement. Testatrix formally signed a will devising the Cobb Farm in accordance with this trust agreement. Thereafter, in breach of such agreement and in breach of the trust under which the Cobb Farm was conveyed to her, she executed a will purporting to convey the Cobb Farm to defendants Lillian Kent Dickens and Paul V. Parks, Jr.

Defendants, The Planters National Bank & Trust Company and Lillian Kent Dickens, are co-executors of the estate of testatrix, having been "issued ancillary letters testamentary by the Clerk of the Superior Court of Nash County." Answering the complaint in their capacity as ancillary co-executors, they disclaimed any interest in the subject matter of the action. The individual defendants, Paul V. Parks, Jr., and Lillian Kent Dickens, in their answer, deny that testatrix agreed to hold the Cobb Farm for the benefit of Wells' three children. They also allege that "plaintiff alone is not the real

party in interest in this case" and that he cannot pursue the action without the joinder of his brother and sister.

As a second further answer and defense they allege (1) that testatrix had exercised her power of appointment contained in the Pearl K. Wells Trust indenture by devising to plaintiff, his brother, and his sister in fee simple all of the farmlands included in the marital-deduction trust; (2) that plaintiff accepted the benefits accruing to him by the exercise of testatrix' power of appointment and thereby estopped himself to attack her devise of the Cobb Farm (which was not a part of the trust corpus) upon any ground whatever.

As a third further answer and defense, defendants allege: On 5 October 1964, R. S. Wells, by his guardian, Josie M. Wells, brought an action in Nash County Superior Court against defendant Bank for a judgment declaring that he owned his share of the property, over which testatrix had exercised her power of appointment, in fee simple freed of the R. S. Wells Trust. The result was that the Supreme Court of North Carolina rendered a judgment in favor of plaintiff. (*Wells v. Trust Co.,* 265 N.C. 98, 143 S.E. 2d 217, decided 23 July 1965.) By electing to take the property freed of the trust under the will of Pearl K. Wells, the plaintiff was bound to recognize the entire will, including the devise of the Cobb Farm to defendant.

On 2 January 1967, Judge Cowper allowed defendants' motion for a severance of issues and directed a separate trial of the plea in bar raised by defendants' third further answer and defense. At the trial before Judge May the parties waived a jury trial. Defendants' evidence consisted of a certified copy of the record and opinion in the case of *Wells v. Trust Co.;* a copy of the final judgment in that action, which the Superior Court of Nash County entered in accordance with the opinion of the Supreme Court; and paragraph six of the plaintiff's complaint, which alleged that Wells conveyed the Cobb Farm to testatrix on 6 February 1965 by deed of gift. Plaintiff offered no evidence.

Judge May found the facts to be as detailed above. In addition, he found:

"The plaintiff accepted the benefit of the devise to him by Pearl K. Wells by the Final Judgment in the case of *Wells v. Trust Company* in the Superior Court of Nash County September 16, 1965, paragraph 4, as follows:

" 'That the property interest acquired by the plaintiff Redmond S. Wells, as an appointee under the general power of appointment

exercised under paragraph Eighth of the Will of Pearl K. Wells passed to said plaintiff absolutely and in fee simple, free of the R. S. Wells Trust.' "

Based on the foregoing facts, Judge May concluded as a matter of law: (1) Plaintiff had the option to renounce the appointment made to him by testatrix' will, take an equitable life estate under the Pearl K. Wells Trust, and attack defendant's title to the Cobb Farm, or accept the appointment. (2) Plaintiff was put to an election, and, by his guardian, he elected to take under testatrix' will. (3) By accepting the devise which testatrix made to him under her power of appointment, plaintiff is estopped to assert any claim to the Cobb Farm "based upon any alleged oral agreement between W. M. Wells and Pearl K. Wells in 1956."

Judge May entered judgment declaring defendants Parks, Jr., and Dickens to be the owners in fee simple of the Cobb Farm and decreeing that plaintiff take nothing by this action. Plaintiff excepted and appealed.

For additional background information, see the statement of facts in the opinions in the two former appeals involving the Pearl K. Wells estate. *Wells v. Trust Co.*, 265 N.C. 98, 143 S.E. 2d 217; *Bank v. Wells*, 267 N.C. 276, 148 S.E. 2d 119.

*Poyner, Geraghty, Hartsfield & Townsend, and William R. Allen, III, for plaintiff appellant.*

*Battle, Winslow, Scott & Wiley, and F. E. Winslow for defendant appellees.*

SHARP, J.

Assuming the truth of plaintiff's allegations, the first question presented by this appeal is: Does the will of testatrix impose upon plaintiff the obligation to choose between a one-third interest in fee in the Cobb Farm and the fee in the one-third undivided interest in the property devised to him in Item 8 of testatrix' will?

The complaint alleges: (1) Wells conveyed the Cobb Farm to testatrix by deed of gift. Before and at the time of the conveyance she agreed with him that she would hold the land for the benefit of Wells' three children, subject to her use of it during her lifetime, and that she would devise the farm to the three children share and share alike. (2) In breach of the trust, testatrix devised the Cobb Farm to defendants Dickens and Parks.

[1, 2]    At this stage in the litigation no evidence tending to prove

the allegations has been offered, and the alleged trust is denied. The complaint, however, alleges the creation of a valid express trust. "When the grantee in a deed, conveying the legal title to land, promises, at or before so acquiring the legal title, to hold it for the benefit of a third person, or declares that he will hold the land in trust for such third person, a valid, express trust is thereby created though the deed contains no provision with reference to any right of such third person. . . . Such trust may be established by parol evidence which is clear, strong, and convincing." *Electric Co. v. Construction Co.*, 267 N.C. 714, 719, 148 S.E. 2d 856, 859-60. An agreement that a third-party beneficiary shall have land at the death of the promisor implies his promise to devise or convey the property so as to effectuate the contract between the promisor and the promisee. *Ledingham v. Bayless,* 218 Md. 108, 145 A. 2d 434, and the authorities cited therein at 116, 145 A. 2d at 439.

[3]   The record evidence offered by defendant and the facts found by the court establish that testatrix devised to defendants the Cobb Farm and to plaintiff a one-third interest in fee in all the North Carolina farm property included in the corpus of the Pearl K. Wells Trust over which she had the power of appointment. Had she not exercised her power, at the time of her death, the one-third interest in the property, which she devised to plaintiff in fee, would have vested in defendant Bank as trustee for plaintiff for life, remainder in fee to plaintiff's heirs at law. Testatrix, however, had an unlimited power of appointment; she could have devised the property to defendants, to her estate, to any persons or institutions of her choice. *Bank v. Wells,* 267 N.C. 276, 148 S.E. 2d 119.

[4-8]   The doctrine of equitable election, as applied to wills, has been stated many times in our decisions. In *Haley v. Pickelsimer,* 261 N.C. 293, 302, 134 S.E. 2d 697, 704, it is said:

"In *Elmore v. Byrd,* 180 N.C. 120, 122, 104 S.E. 162, Walker, J., in a statement often quoted in subsequent decisions, says: 'An election, in equity, is a choice which a party is compelled to make between the acceptance of a benefit under a written instrument, and the retention of some property *already his own,* which is attempted to be disposed of in favor of a third party by virtue of the same paper. The doctrine rests upon the principle that a person claiming under any document shall not interfere by title paramount to prevent another part of the same document from having effect according to its construction; he cannot accept and reject the same writing.' (Our italics). In *Lamb v. Lamb,* 226 N.C. 662, 665, 40 S.E. 2d 29, Seawell, J., in accord with prior cited cases, states: 'The doctrine

of election, as applied to wills, is based on the principle that a person cannot take benefits under the will and at the same time reject its adverse or onerous provisions; cannot, at the same time, hold under the will and against it. (Citations). The intent to put the beneficiary to an election must clearly appear from the will. (Citations). The propriety of this rule especially appears where, in derogation of a property right, *the will purports to dispose of property belonging to the beneficiary* and, inferentially, to bequeath or devise other property in lieu of it.' (Our italics). Thus, as stated in *Honeycutt v. Bank*, 242 N.C. 734, 744, 89 S.E. 2d 598: 'An election is required only when *the will* confronts a beneficiary with a choice between two benefits which are *inconsistent with each other.'* "

[9]    Nothing else appearing, when a testator purports "to devise *specific property*, not owned by him, to a person other than the true owner, and provides other benefits for the owner of such specific property, such beneficiary is put to his election. *Sandlin v. Weaver*, 240 N.C. 703, 83 S.E. 2d 806; *Trust Co. v. Burrus*, 230 N.C. 592, 55 S.E. 2d 183. Even so, if it appears that the testator erroneously considered the specific property so devised to be his own, no election is required. *Byrd v. Patterson, supra* [229 N.C. 156, 48 S.E. 2d 45]; *Benton v. Alexander*, 224 N.C. 800, 32 S.E. 2d 584; *Elmore v. Byrd*, 180 N.C. 120, 104 S.E. 162." *Honeycutt v. Bank*, 242 N.C. 734, 744, 89 S.E. 2d 598, 606. *Accord, Lovett v. Stone*, 239 N.C. 206, 79 S.E. 2d 479.

[10]    Plaintiff's allegations that testatrix held the Cobb Farm, which she devised to defendants, in trust for plaintiff, his brother, and his sister, establish that testatrix attempted to devise specific property to others than the true owners. When she devised to plaintiff a fee in other property, of which she could have deprived him entirely and in which he would have taken only an equitable life estate had she not exercised her power, testatrix provided for him, the owner of the specific property she purported to devise to defendants, a substitute benefit. (Plaintiff's brother and sister, however, took no new estate by testatrix' appointment; she devised them the same estate they would have taken under the Pearl K. Wells Trust had she not exercised her power.)

Under plaintiff's allegations, testatrix could not have considered the Cobb Farm as her own, for he avers that she entered into an express contract with Wells to devise the Cobb Farm to his three children. Obviously, therefore, in devising trust property to defendants in fee simple, free from the trust and in contradiction of its

WELLS v. DICKENS

terms, she repudiated the trust. *Sandlin v. Weaver,* 240 N.C. 703, 83 S.E. 2d 806.

**[10, 11]** The circumstances attending the devise of the Cobb Farm to defendants and of plaintiff's share in the remainder of the Pearl K. Wells Trust to him in fee do not appear upon the face of the will but, when they are known, the terms of the will clearly reveal testatrix' intention to put plaintiff to an election. Although it is always desirable that a testator spell out his intention to put a devisee to an election, this is not required when the nature of his dispositions manifests that intent. See *Wilson v. Safe Deposit & Trust Co.,* 183 Md. 245, 37 A. 2d 321, 152 A.L.R. 892.

**[10, 12]** The doctrine of election can be enforced against persons under disability, *Earnhardt v. Clement,* 137 N.C. 91, 49 S.E. 49, *McQueen v. McQueen,* 55 N.C. 16, *Robertson v. Stephens,* 36 N.C. 247. The will required plaintiff to elect between the one-third interest he claims in the Cobb Farm and the property which testatrix devised him in Item 8 of her will. Thus the answer to the first question is YES.

The second question presented is: Has plaintiff made a binding election to take a fee simple interest in the property which testatrix devised him in lieu of a one-third interest in the Cobb Farm?

**[13]** The trial judge found as a fact that plaintiff had accepted the fee testatrix devised to him. He held as a matter of law that in so doing plaintiff had made his election and estopped himself from asserting any claim to the Cobb Farm. If plaintiff were competent, his dealings with the devised property (as conducted by his guardian) would imply his election to accept the devise, 97 C.J.S. *Wills* § 1272 (1957), and support the court's findings of fact:

(1) In the action for a declaratory judgment, which plaintiff (by his guardian, Josie M. Wells), Alice Wells Romanek, and William M. Wells, Jr., instituted on 5 October 1964 against defendant Bank as trustee under the Pearl K. Wells Trust and as ancillary administrator of Wells' estate in North Carolina, defendant Bank and defendant·Dickens as co-executors of testatrix' estate in North Carolina, defendant Dickens individually *et al.,* plaintiff made specific allegations as to his rights under testatrix' will. He sought a judicial decree that under Item 8 he acquired his share of the property therein devised in fee, freed of the R. S. Wells Trust. He thereby evidenced an intention to take under the Item-8 devise if the court decided in accordance with plaintiff's contentions. 97 C.J.S. *Wills* § 1276 (1957); 57 Am. Jur. *Wills* § 1542 (1948). Plaintiff prevailed in that action

when this Court construed the will in accordance with his position. *Wells v. Trust Co., supra.* Had plaintiff lost, the unsuccessful assertion of his claim would not have amounted "to a conclusive election for or against it, the theory being that where such a claim is proven groundless it is conclusively shown that the beneficiary was not in possession of two inconsistent rights and hence was under no duty to make an election. . . ." 57 Am. Jur. *Wills* § 1542 (1948). Extended discussion of the effect of plaintiff's participation in the action is unwarranted in view of his incompetency. See, however, Annot., Election by beneficiary to take under or against will as predicable upon initiation of, or participation in, court proceedings, 166 A.L.R. 316, 330-332 (1947) and Annot., 93 A.L.R. 2d 8, 43-45 (1964).

(2)   In *Wells v. Trust Co., supra,* plaintiff, his brother, and his sister sought a decree that they were entitled to the whole of the rents which accrued from the trust property during the year of testatrix' death. The decision was that the rents from the property be apportioned between testatrix' personal representatives and the remaindermen, that is, plaintiff, his brother, and his sister. Doubtlessly, these rents have been paid to the remaindermen. When the beneficiary chooses to accept one of two inconsistent benefits, such choice is tantamount to the rejection of the other. *Trust Co. v. Burrus,* 230 N.C. 592, 55 S.E. 2d 183.

(3)   On 20 April 1965, the personal representatives instituted an action in Wake County to recover from plaintiff the pro rata part of the federal-estate tax attributable to the property he received under Item 8 of testatrix' will. A judgment — which this Court upheld on 11 May 1966 in *Bank v. Wells,* 267 N.C. 276, 148 S.E. 2d 119 — was rendered against plaintiff for his proportionate share of the tax, $21,956.72 with interest from varying dates on sums making up that total. We take judicial notice of our records in prior interrelated actions, *Haley v. Picklesimer, supra.* The record in that case shows no contention by plaintiff that he had not accepted the Item-8 devise.

[14]   Thus, were plaintiff competent, the answer to the second question would be YES, and the ruling of the court that plaintiff was estopped to claim an interest in the Cobb Farm would be sustained. Plaintiff, however, is an incompetent, and his guardian could not make an election for him without the direction and approval of the judge of the Superior Court. This she has not obtained; the answer to the second question, therefore, must be No. *Weeks v. Weeks,* 77 N.C. 421; *Flippin v. Banner,* 55 N.C. 450; *McQueen v. McQueen, supra.* See *Price v. Price,* 133 N.C. 494, 510, 45 S.E. 855, 860. "[T]here

is no dissent from the proposition that in the absence of express stat-
utory authority, the guardian or committee of an incompetent can-
not make an election in behalf of the ward to take under or against
the will of a deceased person. . . . The election in behalf of the
infant or incompetent must be made by or with the consent of a
court having jurisdiction of the ward's estate. . . ." 25 Am. Jur.
*Guardian and Ward* § 104 (1940); 97 C.J.S. *Wills* § 1247 (1957);
5 Page, Wills § 47.18 (Bowe-Parker rev. ed. 1962); Gardner, Wills
§ 174 (1903); 1 Jarman, Wills ch. XVI, § VII, p. 554 (6th ed. 1910);
Pritchard, Wills and Administration § 754 (1894); Thompson, Law
of Wills § 477 (2d ed. 1936); 2 Underhill, Law of Wills § 737 (1900);
Annot., Election on behalf of incompetent to take under or against
will, 147 A.L.R. 336 (1943) supplementing 74 A.L.R. 452 (1931).

[15]    When an election is required of one under disability, upon
the petition of his guardian, or other interested party, the judge will
hear such evidence as will enable him to determine which election
is in the ward's best interest. If he deems it necessary, the judge may
appoint a special master to take an account, hear evidence, and re-
port his findings and recommendations to the court. After he has as-
certained the facts, explored the consequences to the ward of the
alternative choices, and determined which choice is in the ward's
best interest, the judge will make appropriate findings of fact and
enter an order directing the guardian what election to make.

In *Flippin v. Banner, supra,* an election was required of an in-
fant whether he would claim under or against a will. Battle, J.,
speaking for the Court, said, "As to the defendant Robert W. George,
who is an infant, there must be a reference to the master, to enquire
and ascertain the value of both interests, and then the Court will
direct what election shall be made for him." *Id.* at 455. In *McQueen
v. McQueen, supra* at 20, the same judge said, "That the parties who
are required to elect in this case are infants, will not prevent an
election from being decreed. . . . The Court will in such cases
refer it to the master to enquire and ascertain the value of both in-
terests, and then direct what election shall be made." In *Weeks v.
Weeks, supra* at 424, Rodman, J., for the Court, said: "In case any
of the parties put to an election are under a disability, the court will
order a reference to ascertain what is to their advantage, and if an
account be necessary for that purpose, will order one."

[16]    Until plaintiff brought this action the court had no knowl-
edge that he claimed any interest in the Cobb Farm. His guardian
has apparently proceeded upon the assumption that no election was
required of her ward, and that he could take both a fee in his share

of the trust property and one-third of the Cobb Farm if he could establish his claim. He cannot. *Noyes v. Noyes*, 233 Mass. 55, 123 N.E. 395. He must elect, but he cannot elect until the validity of his claim to the Cobb Farm is established. At the present time he has no estate in the Cobb Farm. According to the records in the office of the Register of Deeds of Wilson County, testatrix owned in fee simple the land, which she devised to defendants. Plaintiff now has nothing but a mere claim that he is one of the three beneficiaries of a parol trust — a claim which he will be required to establish by evidence which is clear, strong, and convincing, and which might be defeated when brought to trial. To put the donee of a benefit under a will to an election, two things are essential: the testator must give property of his own, and he must profess to dispose of property belonging to the donee. *Haley v. Pickelsimer, supra; Lamb v. Lamb*, 226 N.C. 662, 40 S.E. 2d 29; *Elmore v. Byrd*, 180 N.C. 120, 104 S.E. 162.

In *Haley v. Pickelsimer, supra*, this Court held that a minor plaintiff's unsuccessful prior action to establish rights based on an alleged contract for her benefit between testator and her mother constituted neither a dissent from the will nor a forfeiture of the bequest made to her therein. *Accord, Langan Realty Co. v. Dixon*, 46 S.D. 170, 191 N.W. 444.

In *Lamar v. McLaren*, 107 Ga. 591, 34 S.E. 116, the testator devised stock in a number of drugstores to certain individuals and directed his executors to operate the stores for five years after his death and to distribute the profits annually among his legatees. Henry J. Lamar, one of the executors and legatees, claimed to have been a partner in the businesses and entitled to a one-third interest therein. The executors sought the direction of the court, *inter alia*, whether the said Henry J. Lamar was "put to his election to choose either under said will or against said will, *or whether the fact of said alleged ownership* by him and claim by him constituted a case for election under said will." *Id.* at 592, 34 S.E. at 116. (Emphasis added.) The trial court declined to permit Henry J. Lamar to submit evidence to establish his interest as a partner in the businesses and decreed that he be put to his election whether he would claim under the will, as a legatee, or against the will as a partner. Upon appeal, the Supreme Court held that the will clearly manifested the testator's intent to dispose of the entire drug business which he had conducted and that Henry J. Lamar could not occupy the position of both surviving partner and legatee. The other legatees, however, denied that he had an interest in the businesses. The court said: ". . . Until this issue had been passed upon and it had been adjudicated that he in fact had an interest in such business, he should not have been

called upon to make an election. Unless he owned an interest in the property which the testator affected to dispose of, the principle of election did not apply. For, in order to put the donee of a benefit under a will to an election, two things are essential: first, the testator must give property of his own; second, *he must profess to dispose of property belonging to his donee.* . . . (Devisee) must have legal title to both benefits and have the right to enforce either at his election. . . . Now, if Henry J. Lamar, Jr. were required to elect between his legacy under the will and his *mere claim* to an interest in the business of H. J. Lamar & Sons, that is, between his legacy and a lawsuit, and he should elect to take his claim, or the court should force him so to elect, and he should, upon a subsequent trial for the enforcement of his claimed partnership interest, fail, for any reason, to establish the same, then there would be no one to compensate, as in such event there would be no defeated or disappointed legatees, but, on the contrary, the other legatees would get the very property he claimed. Inasmuch, therefore, if Henry J. Lamar, Jr. does not in fact own an interest in the business of H. J. Lamar & Sons, one of the essentials of an election is wanting and the rule is inapplicable, we direct that he be not called upon to make an election until after there has been in this case an adjudication of the question whether or not he is in fact the owner of an interest in the property of the business of H. J. Lamar & Sons, disposed of by the will, and then only in the event this issue is determined in his favor." *Id.* at 604-05, 34 S.E. at 121. *Accord, Rieves v. Smith,* 184 Ga. 657, 192 S.E. 372, 112 A.L.R. 368.

In *Holliday v. Pope,* 205 Ga. 301, 53 S.E. 2d 350, the plaintiff alleged that the testatrix contracted to devise him certain real estate in consideration of his agreement to make his home with her and render her such assistance as she required. The testatrix devised the specific property, which the plaintiff alleged she had agreed to give him, to the defendant, and gave the plaintiff other property. In plaintiff's suit against the devisee and executor for specific performance of the testatrix' alleged contract, he contended that the plaintiff could not maintain the action because he had "not renounced his legacy under the will." Relying upon *Lamar v. McLaren, supra,* the court said: "The petitioner now has a lawsuit, a mere claim, which might be defeated when brought to trial. . . ." The decision was that he would be required to elect "only when by a judgment of the court the petitioner acquires legal title to the property which he seeks; *and by the very act of praying for and obtaining such a decree of title the petitioner will have thereby made an election to renounce his legacy under the will* . . . [T]he petitioner is not re-

quired to make an election at this time, and the election to take the
title by specific performance of the contract when that is an ac-
complished fact will deny to him any right or title in the property
given him under the will." *Id.* at 311-12, 53 S.E. 2d at 357. (Italics
ours.)

A different conclusion was reached in *Elmore v. Covington,* 180
Tenn. 128, 172 S.W. 2d 809, wherein the court said that claimant-
devisees "will not be permitted to bargain with a dead man"; that
they must elect between accepting the devise and *prosecuting* a suit
for damage for breach of contract to make a will.

[16]    In our opinion, the Georgia court, in *Holliday v. Pope, supra,*
has found the correct solution to the problem which arises when a
beneficiary is required to elect between a devise or bequest and
property devised to a third person to which he has an unadjudicated
claim. The devisee-claimant is not required to elect until his claim
has been adjudicated in his favor, but, when this has been done, "ob-
taining such a decree of title" constitutes his election to take the
property for which he sued. This is also the solution suggested by
the author of Annot., Necessity of election between will and con-
tract by testator to leave property at death, 152 A.L.R. 898 (1944),
wherein it is said: ". . . In the ordinary non-contract case, where
the devisee is required to elect merely as between his own property
and that which the will offers in exchange, a fair choice is presented,
for it is plain that he will receive either one or the other. But, if, in
the case of a contract claimant who has not actually received or
accepted what the will offers, the doctrine of election is to be so ap-
plied as to require him to reject wholly and finally the provisions of
the will before seeking to establish the contract — that is, if he is
required to choose in advance between a meager certainty and the
expense and uncertainties of litigation founded on parol evidence —
a fair choice is not presented. As so applied, the 'equitable' doctrine
of election may become inequitable; it has the merit of discouraging
litigation, but not the merit of encouraging honorable dealing. Armed
with a doctrine extended to that point, a testator may easily drive a
hard bargain in avoidance of his contracts.

"It should be sufficient that the claimant is not permitted to take
both under the will and against it, and that in arriving at a solution
of his problem no substantial injury is occasioned to other distrib-
utees. The matter might be dealt with in a manner analogous to that
permitted in the case of contracts claimed to be subject to a right of
rescission. If the will and the claimed contract are irreconcilable and
the claimant takes under the will, he abandons the contract; but if

he attempts to establish the alleged contract (as a rescinder attempting to establish fraud) and fails therein, he should be permitted to take what the will gives him, with or without an imposition of equitable terms." *Id.* at 898-99. See statement of Ruffin, J., in *Dunlap v. Ingram,* 57 N.C. 178, 188.

[17] Since plaintiff has not made a binding election, and since he must elect between the fee devised him in Item 8 and the interest he claims in the Cobb Farm (assuming he is able to establish that Claim), plaintiff's guardian must obtain the court's direction as to which choice she will make. It follows that she must secure the consent of the court to continue the prosecution of this action further, for, if she obtains a judgment establishing the trust which she has alleged, the election is made. If she loses, however, plaintiff will still retain the devise.

In order to decree the election which the guardian shall make, the court must determine, as a question of fact, which choice is in her ward's best interest. Necessarily, therefore, the judge must consider the relative value of plaintiff's interest in the two properties and the income therefrom, as well as any other relevant factors which may bear upon the question. See Annot., Factors considered in making election for incompetent to take under or against will, 3 A.L.R. 3d 6 (1965). *Inter alia,* pertinent consideration here would include plaintiff's chances of obtaining a judgment establishing the trust he has alleged; the cost of the litigation; the effect of such a judgment upon plaintiff's liability for State inheritance and federal-estate taxes — liabilities which have heretofore been established for the devised property; and the financial consequences of incorporating the Item-8 property into the corpus of the R. S. Wells Trust.

To evaluate plaintiff's claim to the Cobb Farm, the judge must inquire into the evidence upon which plaintiff will rely to establish the allegations of the complaint in this action.

The judgment of the Superior Court will be vacated and the case remanded for proceedings in accordance with this opinion. Any statements in *Price v. Price,* 133 N.C. 494, 510, 45 S.E. 855, 860, which may seem to conflict with the conclusion which we have reached were not necessary to the decision of that case. In *Price,* the jury's verdict established that the testator's will complied with his contract to devise property in suit. Therefore, no question of election was involved. See comment on *Price* in Annot., 152 A.L.R. 898, 901 (1944).

[18] Alice Wells Romanek and William M. Wells, Jr., as pointed out by defendants, were not made parties to this action. In the event the court should authorize plaintiff to proceed with this action, it.

would appear desirable that they be made parties to the end that the individual defendants' title to the Cobb Farm may be adjudicated in one suit. *Allred v. Smith,* 135 N.C. 443, 47 S.E. 597; Annot., Privity between co-tenants for purposes of doctrine of res judicata, 169 A.L.R. 179 (1947); 1 McIntoch, N. C. Practice and Procedure § 643 (2d ed. 1956).

[19] The costs of this appeal will be divided equally between plaintiff and the individual defendants. Upon the allegations of the complaint, we perceive no theory upon which the executors of Pearl K. Wells are proper parties to this action. "Title to land of decedents does not vest in their executors but in their heirs at law or devisees." *Hinkle v. Walker,* 213 N.C. 657, 658, 197 S.E. 129. See *Parker v. Porter,* 208 N.C. 31, 179 S.E. 28; *Williams v. Hooks,* 200 N.C. 419, 157 S.E. 65.

Reversed and remanded.

BRANCH and HUSKINS, JJ., took no part in the consideration or decision of this case.